## H. P. WELCH CO. *v.* NEW HAMPSHIRE.

No. 295. Argued January 3, 1939.—Decided January 30, 1939.

*Mr. Robert W. Upton* for appellant.

*Messrs. Dudley W. Orr* and *John E. Benton,* with whom *Mr. Thomas P. Cheney,* Attorney General of New Hampshire, was on the brief, for appellee.

By leave of Court, *Messrs. Clyde S. Bailey* and *John E. Benton* filed a brief on behalf of the National Association of Railroad and Utilities Commissioners, as *amicus curiae,* in support of appellee.

MR. JUSTICE BUTLER delivered the opinion of the Court.

A statute of New Hampshire [1] declares unlawful the operation on its roads of motor vehicles for specified transportation by drivers who have been continuously on duty for more than 12 hours. By this appeal we are called on to decide whether, as applied in this case, §§ 3, 4, and 8 are repugnant to the equal protection clause of the Fourteenth Amendment, and whether §§ 8 and 11

---

[1] Laws 1933, c. 106 as amended by c. 160,

were superseded by the federal Motor Carrier Act, 1935, § 204,[2] and regulations prescribed under it by the Interstate Commerce Commission.

The New Hampshire Act declares that the number of motor vehicles operated by carriers for hire has made regulation necessary to the end that its highways may be safer for use by the general public. § 1. It requires common and contract carriers between points within the State to register their trucks with the public service commission. § 2. Contract carriers include those, other than common carriers, who haul for hire by motor vehicle on any road of the State. § 3. Exempted from the challenged regulation are those transporting products of their own manufacture or labor (§ 3), and motor vehicles not principally engaged in the transportation of property for hire or operating exclusively in a city or town or within 10 miles of its limits or beyond the 10-mile limit on not more than two trips in 30 days. § 4.

Section 8 declares that "It shall be unlawful for any driver to operate, or for the owner thereof to require or permit any driver to operate, any motor vehicle for the transportation of property for hire on the highways of this state when the driver has been continuously on duty for more than twelve hours, and after a driver has been continuously on duty for twelve hours it shall be unlawful for him or for the owner of the vehicle to permit him to operate any such motor vehicle on the highways of this state until he shall have had at least eight consecutive hours off duty." Section 11 provides that for violations of the Act the commission shall have authority after notice and hearing, to suspend or revoke any registration certificate.

Appellant is a Massachusetts corporation doing intrastate and interstate business as a common and contract

[2] 49 Stat. 546; 49 U. S. C. § 304

carrier of freight for hire by motor vehicles over public highways in that State and in New Hampshire. Approximately 99 per cent of its business is interstate. It has terminals at Boston in Massachusetts, and at Manchester, Concord, and Claremont in New Hampshire. In 1937 it obtained from the New Hampshire commission registration certificates for 20 trucks. After notice and hearing, the Commission, in a decision filed as of December 11, 1937, held appellant had violated the provisions of § 8 and ordered that its certificates be suspended for five days. Appellant appealed to the state supreme court. That court upheld the challenged provisions and dismissed the appeal. 89 N. H. 428; 199 A. 886.

1. Sections 3, 4, and 8 are not repugnant to the equal protection clause. The state court found that the purpose of § 8 is "to protect users of the highways of this State from the danger likely to result to them from the operation thereon of trucks under the control of drivers suffering from the effects of fatigue." Appellant's contention is that the discrimination between drivers of motor carriers for hire subject to § 8 and those exempted by §§ 3 and 4, has no fair or substantial relation to highway safety. It suggests, and we may assume, that the roads of New Hampshire are extensively used for transportation by trucks not regulated by § 8; that drivers of them are just as susceptible to fatigue from long hours of continuous operation as are those operating the trucks used by appellant and other common carriers for hire, and that the dangers attributable to fatigued drivers are the same in one class of service as in another. Appellant has failed to show that, in operations to which § 8 applies, continuous driving for more than 12 hours is not so much more prevalent than in those exempted (§§ 3, 4) as to constitute a reasonable basis for the differentiation. We are of opinion that, for reasons given above, those stated by the state supreme court in this case and by

this Court in *Dixie Ohio Express Co.* v. *Georgia Comm'n,* *ante,* p. 72, the classification in question does not conflict with the rule of equal protection.

2. As applicable to the violations of the state law found to have been committed by appellant, §§ 8 and 11 were not superseded by the federal Motor Carrier Act, 1935, or the regulations made under it by the Interstate Commerce Commission.

That Act became law August 9, 1935. Under the caption "General Duties and Powers of the Commission," § 204 (a) declares: "It shall be the duty of the Commission . . . to regulate" common and contract carriers by "motor vehicle . . . and to that end the Commission may establish reasonable requirements with respect to . . . qualifications and maximum hours of service of employees, and safety of operation and equipment." By order made under authority of that section December 29, 1937, the Commission prescribed regulations as to maximum hours of service of drivers of motor vehicles operated in interstate commerce by common and contract carriers.[3] These regulations were modified July 12, 1938 [4] and their effective date has been postponed to January 31, 1939.[5] With exceptions that need not be stated here, they declare that no common carrier shall permit or require any driver to remain on duty for more than 60 hours a week or more than 10 hours in any period of 24 consecutive hours.[6]

Appellant does not suggest that prior to congressional action the State was without power, for protection of persons and property, to regulate use of its roads as provided in § 8, and to enforce obedience in accordance with § 11. *Cooley* v. *Board of Wardens,* 12 How. 299, 320.

---

[3] 3 M. C. C. 665.

[4] Ex Parte No. MC–2, July 12, 1938.

[5] Ex Parte No. MC–2, December 22, 1938.

[6] Ex parte No. MC–2, July 12, 1938 (Rule 3 (a) and (b)).

*Smith* v. *Alabama,* 124 U. S. 465. *Cleveland, C., C. & St. L. Ry. Co.* v. *Illinois,* 177 U. S. 514. The violations for which the state commission suspended appellant's registration certificates occurred after the effective date of the federal Act and before the Interstate Commerce Commission made its order. Without so deciding, we assume, so far as concerns the periods of continuous service condemned by the state commission, that when the federal regulations take effect they will operate to supersede the challenged provisions of the state statute. Then, the sole question is whether Congress intended that from the time of the federal enactment until effective action by the Commission, there should be no regulation of periods of continuous operation by drivers of motor vehicles hauling in interstate commerce. Our decisions provide no formula for discovering implied effect of federal statutes upon state measures such as that under consideration. Here, the way is made clear by the language and context considered in connection with existing conditions. Section 204 (a) definitely imposes upon the Commission the duty to "regulate" but merely authorizes it to establish reasonable requirements with respect to, inter alia, qualifications and maximum hours of service of employees and safety of operation and equipment. The distinction intended between duty imposed and action permitted is more striking in view of the matters that, along with qualifications and hours of service of drivers, are committed to the discretion of the Commission. They include transportation of baggage and express, uniform systems of accounts, records, and reports, and preservation of records.

The roads belong to the State. There is need of local supervision of operation of motor vehicles to prevent collisions, to safeguard pedestrians, and the like. Unquestionably, reasonable regulation of periods of continuous driving is an appropriate measure. In view of the

efforts of governmental authorities everywhere to mitigate the destruction of life, limb and property resulting from the use of motor vehicles, it cannot be inferred that Congress intended to supersede any state safety measure prior to the taking effect of a federal measure found suitable to put in its place. Its purpose to displace the local law must be definitely expressed. *Mintz* v. *Baldwin,* 289 U. S. 346, 350. The rule applicable is clearly stated in *Illinois Central R. Co.* v. *Public Utilities Comm'n,* 245 U. S. 493, 510: "In construing federal statutes enacted under the power conferred by the commerce clause of the Constitution . . . it should never be held that Congress intends to supersede or suspend the exercise of the reserved powers of a State, even where that may be done, unless, and except so far as, its purpose to do so is clearly manifested." We have frequently applied that principle. See e. g. *Reid* v. *Colorado,* 187 U. S. 137, 148. *Missouri Pacific Ry. Co.* v. *Larabee Mills Co.* 211 U. S. 612, 621, *et seq. Missouri, K. & T. Ry. Co.* v. *Harris,* 234 U. S. 412, 418–419. *Smith* v. *Illinois Bell Telephone Co.,* 282 U. S. 133, 139. *Northwestern Bell Tel. Co.* v. *Nebraska Ry. Comm'n,* 297 U. S. 471, 478. *Kelly* v. *Washington,* 302 U. S. 1, 10, *et seq.* Appellant cites *Northern Pacific Ry. Co.* v. *Washington,* 222 U. S. 370, 378; *Erie Railroad Co.* v. *New York,* 233 U. S. 671; *Oregon-Washington Co.* v. *Washington,* 270 U. S. 87; *Napier* v. *Atlantic Coast Line,* 272 U. S. 605, 613; and *Missouri Pacific R. Co.* v. *Porter,* 273 U. S. 341, 345. In each, the facts differ so widely from those of the case before us that no discussion is required to show that it is not in point.

Plainly Congress by mere grant of power to the Interstate Commerce Commission did not intend to supersede state police regulations established for the protection of the public using state highways.

*Affirmed.*