THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* RAYMOND DAWSON and ELMER J. DUNBAR, Defendants.

City Court of Buffalo, March 3, 1955.

*Jacob K. Javits, Attorney-General (Michael P. Geraci* of counsel), for plaintiff.

*Vincent M. Gaughan* for defendants.

ZIMMER, J. The defendants are charged with a violation of section 167 of the Labor Law which reads in part as follows:

" When any driver of a motor truck or motor bus shall have been on duty continuously for ten hours or at separate intervals for ten (10) hours in the aggregate or less in any fourteen consecutive hours including time for meals, even though part of such time shall have been outside of the state of New York he shall not continue or again go on duty without having had at least eight consecutive hours off duty. The periods of release from duty herein required shall be free from and off the truck or bus and free from work of any kind and shall be given at such places and under such circumstances that rest and relaxation from the strain of the duties of employment may be obtained."

From the evidence it appears that the defendants Elmer J. Dunbar and Raymond M. Dawson are employed by the Pilot Freight Carriers, Inc. of Winston Salem, North Carolina, a corporation which is engaged in the trucking business in interstate commerce in the State of New York, and does some intrastate trucking business in the States of North Carolina, South Carolina and Georgia.

That on the 9th day of September, 1954, about 10:00 A.M. the defendants, driving a large tractor-trailer, left their warehouse at Winston Salem, North Carolina with a cargo of merchandise to be delivered in the State of New York.

That said tractor-trailer had a built-in sleeping compartment or bunk wherein one of the defendants slept while the other continued to drive.

That the defendants drove continually through the States of North Carolina, Virginia, Pennsylvania and finally arrived in the city of Buffalo, New York, on the 10th day of September, 1954, at about 7:00 P.M., and while driving into the warehouse of the Pilot Freight Carriers, Inc. at 100 Dingens Street they were arrested by the Buffalo police and charged with a violation of section 167 of the Labor Law, as aforesaid.

That the defendants, from the time that they left their warehouse at North Carolina to the time when they arrived in the city of Buffalo, New York, spent a period of thirty-two consecutive hours on the highway.

That at the time of the arrest the defendants submitted four forms of the driver's daily log, being Form B.M.C. 59 prescribed by the Interstate Commerce Commission of Washington, D. C.

The defendants challenge the constitutionality of the statute in question on the ground that it is beyond the power of the Legislature to enact legislation regulating commerce between States, the jurisdiction of the Congress of the United States

with respect thereto being exclusive, and that section 167 of the Labor Law has been superseded by the Federal Motor Carriers Act (U. S. Code, tit. 49, § 301 *et seq.*) and the rules and regulations of the Interstate Commerce Commission which became effective July 1, 1938.

After a careful examination of the authorities on this subject, this court is of the opinion that so far as the trucking industry is concerned, when it is engaged directly in interstate commerce, section 167 has no application to said trucking industry, but the rules and regulations of the Interstate Commerce Commission govern and control.

This problem has been recognized many years ago by the great Chief Justice MARSHALL in the case of *Gibbons* v. *Ogden* (9 Wheat. [U. S.] 1), when at page 194 the Chief Justice said as follows: "Commerce among the States, cannot stop at the external boundary line of each State, but may be introduced into the interior."

The same theory was enunciated in the case of *Houston & Texas Ry.* v. *United States* (234 U. S. 342), wherein the court said as follows (p. 351): "Congress is empowered to regulate, — that is, to provide the law for the government of interstate commerce; to enact 'all appropriate regulation' for its 'protection and advancement' * * *; to adopt measures 'to promote its growth and insure its safety' * * *; 'to foster, protect, control and restrain' * * *. Its authority, extending to those interstate carriers as instruments of interstate commerce, necessarily embraces the right to control their operations in all matters having such a close and substantial relation to interstate traffic that the control is essential or appropriate to the security of that traffic, to the efficiency of the interstate service, and to the maintenance of conditions under which interstate commerce may be conducted upon fair terms and without molestation or hinderance." (See, also, *Bethlehem Co.* v. *State Board,* 330 U. S. 767.)

These powers and duties were given to the Interstate Commerce Commission by Congress (U. S. Const., art. I, § 8, subd. 3) under the Interstate Commerce Act known as the Motor Carriers Act (U. S. Code, tit. 49, § 304), under the powers and duties of the commission and powers and duties generally, wherein the Interstate Commerce Commission was given exclusive power to regulate contract carriers by motor vehicle and to establish reasonable rules and regulations to have a uniform system in the trucking business between the different States.

The contention of the Attorney-General that the Federal regu-

lations did not supersede the State law as the State being a sovereign power never surrendered to Congress the power to legislate for the public health, morals and safety of its citizens and such inherent power rests with the States and that the State has concurrent jurisdiction under the police powers of the State, is untenable. In this connection see: Regulations (Interstate Commerce Comm. Motor Carrier Safety Reg.) 195.2; 195.3; 195.4; 195.6 and 195.8; and the following cases (*People ex rel. Kornbleit* v. *Yarbrough,* 168 Misc. 769; *Missouri Pacific Ry.* v. *Larabee Mills,* 211 U. S. 612; *Fougera & Co.* v. *City of New York,* 224 N. Y. 269; *Welch Co.* v. *New Hampshire,* 306 U. S. 79; *Public Service Comm.* v. *Welch Co.,* 91 N. H. 328.)

It follows that the defendants are discharged.