This appeal involves a claim of age discrimination by a Mobile bar pilot, who was requested by the State Pilotage Commission to surrender his bar pilot's license on his sixty-eighth birthday, as required by Code 1975, § 33-4-53.
The bar pilot filed this action against the members of the State Pilotage Commission, and asked the Court to declare the state's compulsory retirement of bar pilots law unconstitutional, because it conflicted with the provisions of the Federal Age Discrimination in Employment Act (FADEA).29 U.S.C.A. § 623 and § 631.
The sole issue presented is whether Alabama's compulsory retirement law is pre-empted by the FADEA. We hold that it is not, and affirm the judgment of the trial court.
 State and Federal Law
Code 1975, § 33-4-53 states:
 Every bar pilot licensed and branched by the state pilotage commission upon reaching the age of 68 years shall be required to retire and surrender his license or branch to the state pilotage commission. (Acts 1961, Ex. Sess., No. 103, p. 2023.)
Sections 623 and 631 of title 29 U.S.C.A. state in pertinent part:
§ 623. Prohibition of age discrimination
Employer practices
(a) It shall be unlawful for an employer —
 (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; . . .
§ 631. Age limits
 Individuals at least 40 but less than 70 years of age
 (a) The prohibitions in this chapter shall be limited to individuals who are at least 40 years of age but less than 70 years of age.
 Is the State Pilotage Commission an "employer"?
In order for us to decide whether the FADEA applies, we must first determine whether the party alleged to have engaged in discrimination is an "employer" within the meaning of the federal statute. Section 630 of title 29 U.S.C.A. defines "employer" as follows:
 (b) The term "employer" means a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the *Page 512 
current or preceding calendar year: Provided, That prior to June 30, 1968, employers having fewer than fifty employees shall not be considered employers. The term also means (1) any agent of such a person, (2) a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State, and any interstate agency, but such term does not include the United States, or a corporation wholly owned by the Government of the United States. [Emphasis supplied.]
Did the State Pilotage Commission have twenty employees? There was conflicting testimony on this issue; the bar pilot contended that it did. The Pilotage Commission contended it had no employees, and in support of its position, cites Mobile BarPilots Ass'n v. Commissioner of Internal Revenue, 97 F.2d 695
(5th Cir. 1938), wherein it was stated:
 A pilot is the servant of the owner of the vessel who is responsible to third persons for his negligence or want of skill. Sherlock v. Alling, 93 U.S. 99, 23 L.Ed. 819.
We hold that the State Pilotage Commission does not employ the pilots; therefore, it is not an "employer" under that provision of the FADEA, because it has less than the prescribed number of employees, but, 29 U.S.C.A. § 630, also defines "employer" as a state agency. Is the State Pilotage Commission a state agency? We hold that it is. It is created by statute, Code 1975, § 33-4-1, and its members are appointed by the governor, Code 1975, § 33-4-3; therefore, it is clear that the State Pilotage Commission is an "employer" within the meaning of the FADEA.
 Does the FADEA preempt the State's Compulsory Retirement Law?
The FADEA obviously conflicts with the state's compulsory retirement law, because the state law requires compulsory retirement of bar pilots at age 68; the FADEA sets the mandatory retirement at age 70; therefore, the dispositive question is whether the federal law preempts state law. We now address that dispositive issue.
The United States Supreme Court in Ray of Atlantic RichfieldCo., 435 U.S. 151, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1977), stated:
 Even if Congress has not completely foreclosed state legislation in a particular area, a state statute is void to the extent that it actually conflicts with a valid federal statute. A conflict will be found "where compliance with both federal and state regulations is a physical impossibility . . .," Florida Lime Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-143 [83 S.Ct. 1210, 1217, 10 L.Ed.2d 248] (1963), or where the state "law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. (Citations omitted.)
The United States Supreme Court has also stated:
 In determining whether state regulation has been preempted by federal action, "the intent to supersede the exercise by the State of its police power as to matters not covered by the Federal legislation is not to be inferred from the mere fact that Congress has seen fit to circumscribe its regulation and to occupy a limited field. In other words, such intent is not to be implied unless the act of Congress fairly interpreted is in actual conflict with the law of the State." Savage v. Jones, 225 U.S. 501, 533
[32 S.Ct. 715, 725, 56 L.Ed. 1182]. See also Reid v. Colorado, 187 U.S. 137 [23 S.Ct. 92, 47 L.Ed. 108], Asbell v. Kansas, 209 U.S. 251 [28 S.Ct. 485, 52 L.Ed. 778], Welch v. New Hampshire, 306 U.S. 79 [59 S.Ct. 438, 83 L.Ed. 500], Maurer v. Hamilton, 309 U.S. 598
[60 S.Ct. 726, 84 L.Ed. 969].
Huron Portland Cement Co. v. City of Detroit, 362 U.S. 440,443, 80 S.Ct. 813, 815, 4 L.Ed.2d 852 (1960). Further, the United States Supreme Court has said:
 This Court has repeatedly refused to void state statutory programs, absent congressional intent to pre-empt them.
 If Congress is authorized to act in a field, it should manifest its intention clearly. It will not be presumed that a federal statute was intended to supersede *Page 513 
the exercise of the power of the state unless there is a clear manifestation of intention to do so. The exercise of federal supremacy is not lightly to be presumed. Schwartz v. Texas, 344 U.S. 199, 202-203 [73 S.Ct. 232, 234-235, 97 L.Ed. 231] (1952).
New York Department of Social Services v. Dublino,413 U.S. 405, 413, 93 S.Ct. 2507, 2513, 37 L.Ed.2d 688 (1972). And in a more recent opinion that Court has stated:
 As we stated in Florida Lime Avocado Growers v. Paul, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963):
 [F]ederal regulation . . . should not be deemed preemptive of state regulatory power in the absence of persuasive reasons-either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained.
DeCana v. Bica, 424 U.S. 351, 356, 96 S.Ct. 933, 937,47 L.Ed.2d 43 (1976).
The Federal District Court for Alaska in Simpson v. AlaskaCommission for Human Rights, 423 F. Supp. 552 (D.C.Alaska 1976), stated:
. . . Preemption occurs when compliance with both federal and state regulations is physically impossible, the nature of the subject matter requires federal supremacy and uniformity, or Congress intended to displace state legislation. Florida Lime and Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-48, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963).
Applying the foregoing principles of preemption, we find no express intent by Congress to supersede and preempt this area of state regulation of bar pilots. The Pilotage Commission points out that in Senate Report No. 493, 95th Cong., 1st Sess. 5 reprinted in (1978), 3 U.S. Code Cong. Admin. News, pp. 504, 508, it was stated, that "[a]s this language makes clear, the ADEA does not preempt State laws"; but that statement is not concerned with the entire Act, only with § 14 (a), now29 U.S.C.A. § 633 (a), which deals with the federal-state interaction in enforcement of age discrimination laws.
As stated in Dorgan v. State, 29 Ala. App. 362, 196 So. 160
(1940):
 "State pilotage laws, though regulations of commerce, are within power of state until such power is abrogated by Congress. Robins Dry Dock Repair Co. v. Navigazione Libera Triestina S.A. (Sup. 1931) [154 Misc. 788] 279 N.Y.S. 257, aff. (1932) 257 N.Y.S. 908, 235 App. Div. 841, aff. (1933) 185 N.E. 698, 261 N.Y. 455; Moran Towing Transp. Co. v. Robins Dry Dock [ Repair] Co. (1933) 290 U.S. 656, 54 S.Ct. 72, 78 L.Ed. [568], 569, rearg. den. Robins Dry Dock Repair Co. v. Navigazione Libera Triestina, S.A. (1933) 262 N.Y. 521, 188 N.E. 47." 46 U.S.C.A. (1939-40 Sup.) § 215, p. 80.
29 Ala. App. at 364, 196 So. at 162. In an early case, the United States Supreme Court in Cooley v. The Board of Wardensof the Port of Philadelphia, 12 How. 299, 13 L.Ed. 996 (1851), citing 1 Stat. at Large 53, stated:
 It may be said that Congress has consented, by the Act of 7th August, 1789, section 4:
 "That all pilots in the bays, inlets, rivers, harbors, and ports of the United States, shall continue to be regulated in conformity with the existing laws of the State, respectively, wherein such pilots may be, or with such laws as the states may respectively hereafter enact for the purpose, until further legislative provision shall be made by Congress." The Act of Congress 2d March, 1837, 5 Stat. at Large, 153, is a repeal of the part of the Act of 1803, now in question.
We hold that the regulation of bar pilots is a matter to be decided by the states, absent congressional intent to preempt that state regulation. For example, in Ray v. AtlanticRichfield Co., 435 U.S. 151, 98 S.Ct. 988, 55 L.Ed.2d 179
(1977), the Supreme Court of the United States decided that federal law had preempted the regulation of pilots of enrolled vessels.[1] The Court opined: *Page 514 . . . [A]s it is clear that States may not regulate the pilots of enrolled vessels, it is equally clear that they are free to impose pilotage requirements on registered vessels entering and leaving their ports. Not only does 46 U.S.C. § 215 so provide, as was noted above, but so also does § 101 (5) of the PWSA, 33 U.S.C. § 1221 (5) (1970 ed., Supp. V), which authorizes the Secretary of Transportation to "require pilots on self-propelled vessels engaged in the foreign trades in areas and under circumstances where a pilot is not otherwise required by State law to be on board until the State having jurisdiction of an area involved establishes a requirement for a pilot in that area or under the circumstances involved. . . .
While a state regulation of bar pilots of "enrolled" vessels which conflicted with a federal regulation would be preempted, we do not believe that Congress, by virtue of the FADEA has preempted the field even as to pilots working on "enrolled" vessels. Assuming, however, that the FADEA did preempt the field as to bar pilots, regardless of the type vessels on which they were working, that does not end the inquiry.
The FADEA provides for "bona fide occupational qualifications", 29 U.S.C.A. § 623 (f)(1). "Bona fide occupational qualifications" are defined in 29 C.F.R. § 860.102 (d), as:
 (d) Federal statutory and regulatory requirements which provide compulsory age limitations for hiring or compulsory retirement, without reference to the individual's actual physical condition at the terminal age, when such conditions are clearly imposed for the safety and convenience of the public.
After defining "bona fide occupational qualifications", § 860.102 (d) continues by giving an example:
 "This exception would apply, for example, to airline pilots within the jurisdiction of the Federal Aviation Agency. Federal Aviation Agency regulations do not permit airline pilots to engage in carrier operations, as pilots, after they reach age 60."
Thus, airline pilots may be required to retire at age 60 by their "employers." There is a close analogy between bar pilots and airline pilots, although we realize that the two are not the same. We cannot ignore the fact that the State's interest in promoting the public safety in its harbors and on its waterways is sufficiently broad to permit the State to require the retirement of bar pilots at age 68; in short, the state law which sets a mandatory retirement age for bar pilots would be a "bona fide occupational qualification," and the FADEA, even if preemptive, would not apply, because of the "bona fide occupational qualification" exemption,[2] but in this case, we give force to the legislative determination that bar pilots should retire at age 68 and hold that this legislative determination meets the requirements of the act which place the burden on the employer to show a factual basis for believing that all or substantially all persons within the class (in this case, persons over 68 years of age) would be unable to perform safely and efficiently the duties of a bar pilot.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES, EMBRY and BEATTY, JJ., concur.
[1] Enrolled vessels are those "engaged in domestic or coastwide trade or used for fishing," whereas registered vessels are those engaged in trade with foreign countries. Douglas v.Seacoast Products, Inc., 431 U.S. 265, 272-273, 97 S.Ct. 1740,1745, 52 L.Ed.2d 304 (1977).
[2] We recognize ". . . that the burden is on the employer to show (1) that the bfoq which it invokes is reasonably necessary to the essence of its business . . ., and (2) that the employer has reasonable cause, i.e., a factual basis for believing that all or substantially all persons within the class . . . would be able to perform safely and efficiently the duties of the job involved, or that it is impossible or impractical to deal with persons over the age limit on an individualized basis." Arrittv. Grisell, 567 F.2d 1267 (4th Cir. 1977). *Page 515