James D. SCHWARTZ, Dale W. Larson, Edward P. O'Neil, and Civil Pilots for Regulatory Reform, Petitioners,

v.

J. Lynn HELMS, Administrator, Federal Aviation Administration, Respondent,

Air Line Pilots Association, Intervenor.

P.A. BOURCIER, Petitioner,

v.

J. Lynn HELMS, Administrator, Federal Aviation Administration, Respondent.

Nos. 82–1527, 82–1648.

United States Court of Appeals, District of Columbia Circuit.

Argued 1 March 1983.

Decided 8 July 1983.

Mark T. McDermott and Robert D. Powell, Washington, D.C., for petitioners. F. Gregory McKenna, Washington, D.C., also entered an appearance for petitioner, in No. 82–1527.

Ellen G. Donovan, Christiansted, V.I., was on brief, for petitioner in No. 82–1648.

John H. Cassady, Asst. Chief Counsel, F.A.A., Washington, D.C., for respondent. Anthony J. Steinmeyer and Wendy M. Keats, Attys., U.S. Dept. of Justice, Washington, D.C., also entered appearances for respondent, in No. 82–1527.

Daniel S. Kozma, Washington, D.C., with whom Gary Green, Washington, D.C., were on brief for intervenor, Air Line Pilots Ass'n, Intern., in No. 82–1527.

Martin C. Seham, New York City, was on brief, for Allied Pilots Ass'n, amicus curiae in No. 82–1527 urging that the order under review herein be vacated.

John S. Yodice, Washington, D.C., with whom Charles J. Peters, Washington, D.C., were on brief, for Aircraft Owners and Pilots Ass'n, amicus curiae in No. 82–1527 urging that the order under review herein be vacated.

Before WILKEY, and WALD, Circuit Judges, and BONSAL *, United States Senior District Judge for the Southern District of New York.

Opinion for the Court filed by Circuit Judge WILKEY.

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

WILKEY, Circuit Judge:

Petitioners, an association of airline pilots and individual airline pilots suffering from coronary heart disease, challenge an amendment to Federal Aviation Administration (FAA) rules for the issuance of airman medical certificates. Under the previous rules, a medical certificate could not be issued to a pilot who suffered from coronary heart disease which might be "reasonably expected to lead to myocardial infarction."[1] The challenged amendment provides that a medical history or clinical diagnosis of coronary heart disease is disqualifying if it "has required treatment or, if untreated, . . . has been symptomatic or clinically significant."[2] Petitioners contend that the proposed amendment is unauthorized by statute and unsupported by sufficient evidence in the record of the rulemaking proceeding. We find, however, that petitioners' objections are unfounded, and affirm the FAA amendment.

## I. BACKGROUND

The FAA is responsible by statute for setting qualifications for airline pilots, including medical qualifications. Its statutory mandate is "to promote safety of flight of civil aircraft"[3] and in doing so to "give full consideration to the duty resting upon air carriers to perform their services with the highest possible degree of safety in the public interest."[4] The FAA implements this mandate by establishing regulations for pilot certification.[5] Pilots who feel that

they have been unlawfully denied certification under FAA regulations may appeal the Federal Air Surgeon's determinations with regard to medical licensing to the National Transportation Safety Board (NTSB).[6] The NTSB then determines *de novo* whether the FAA decision comports with the applicable regulations. The NTSB is thus responsible to apply to particular cases the general regulations set out by the FAA.

As part of the air pilot certification requirements, the FAA administers a comprehensive set of rules governing the medical standards to be met by qualified pilots.[7] The rules specify that certain medical disabilities are automatically disqualifying.[8] This is the case for any applicant who has had a myocardial infarction. However, for angina pectoris or other evidence of coronary heart disease, the FAA had found that an automatic disqualification would be unduly stringent because some forms of coronary heart disease might not present a significant threat of a subsequent heart attack and indeed might be entirely asymptomatic. There was no reason to disqualify some pilots who suffered from the milder forms of the disease.[9] Therefore, the FAA decided to disqualify only those pilots who suffered from coronary heart disease which "may reasonably be expected to lead to myocardial infarction."[10]

The application of the coronary heart disease regulations thus required a determination in each case of the risk that the coro-

---

1. 14 C.F.R. §§ 67.13(e), 67.15(e), 67.17(e) (1982).

2. 47 Fed.Reg. 16298, 16308 (1982).

3. 49 U.S.C. § 1421(a) (1976).

4. *Id.* § 1421(b).

5. *Id.* §§ 1422, 1429.

6. 49 U.S.C. § 1422(b) (issuance).

7. 14 C.F.R. § 67 (1982).

8. *See, e.g.,* 14 C.F.R. § 67.13(b)(1) (1982) (20/20 vision required with corrective lenses); *id.* (d)(2)(i)(a) (epilepsy disqualifying).

9. The Civil Aeronautics Board, acting as predecessor to the FAA, considered automatically denying certification whenever there was "an established diagnosis . . . of coronary heart disease." 21 Fed.Reg. 1326, 1326 (1956). The CAB ultimately rejected the "certainty" of that approach, and instead adopted an approach which looked to "whether or not such physical deficiencies 'would be likely to' render an applicant unable to perform the duties" required of him or her. 22 Fed.Reg. 4670, 4670 (1957). Both the rule adopted by the FAA in 1959 and the rule challenged here implement in different ways this probabilistic approach.

10. 24 Fed.Reg. 7309, 7311 (1959), *most recent codification at* 14 C.F.R. §§ 67.13(e)(1)(ii), .15(e)(1)(ii), .17(e)(1)(ii) (1982) (subsequently amended).

nary heart disease would subsequently lead to a heart attack. In practice, it was the FAA's policy "to deny . . . certification [of] an applicant who has a history of finding of coronary heart disease, including those who have undergone coronary artery bypass surgery."[11] Instead, the FAA would grant restricted certification, where possible, through the formal exemption process, which permitted the FAA to specify limitations and to require reevaluation of the airman's condition.[12] The FAA's decisions to grant exemptions were not reviewable by the NTSB.

Pilots who were denied unrestricted certification could appeal to the NTSB, which had jurisdiction to reassess the risk in each case in deciding whether certification ought to have been granted.[13] Unlike the FAA, the NTSB did not assume that any significant clinical history of coronary heart disease, and especially disease that required surgery, was *per se* disqualifying. The NTSB at times granted unrestricted medical certification to pilots with a clinical history of coronary heart disease, including some who had had heart surgery, because it was convinced in these cases that the past clinical history did not present a significant risk of a future heart attack.[14]

In response to such interpretations of the 1959 rule, the FAA proposed the amendment now at issue. As the FAA explained in its Notice of Proposed Rulemaking, the premise of the proposed regulation is that "significant coronary artery disease, even if treated, poses an increased risk of myocardial infarction or other adverse cardiac events, and that evidence of untreated disease is disqualifying in the absence of definitive evidence showing it to be insignificant."[15] The Notice expressed concern that the previous rule had been construed to permit airman medical certification even "in the presence of significant artery disease."[16] After the required informal rulemaking procedure, the FAA adopted the proposed amendment,[17] and the present appeal ensued.

## II. ANALYSIS

Petitioners in effect present a two-pronged attack on the rule.[18] First, they contend that it is unauthorized by statute because it has the effect of circumventing statutorily required NTSB review of FAA certification decisions.[19] Second, petitioners contend that the proposed amendment lacks sufficient support by evidence in the record in the informal rulemaking procedure and is therefore arbitrary and capricious.[20] Neither of these contentions convinces us, how-

---

**11.** 47 Fed.Reg. 16298, 16302 (1982).

**12.** *Id.*

**13.** *See Petition of Ewing,* 1 N.T.S.B. 1192, 1194 (1971), *reconsideration denied,* 1 N.T.S.B. 1190 (1971).

**14.** *E.g., Petition of Schwartz,* N.T.S.B. Order No. EA–1331 (19 Oct. 1979), *reconsideration denied,* N.T.S.B. Order No. EA–1336 (21 Jan. 1980); *Petition of Larson,* N.T.S.B. Order No. EA–1735 at 16 (15 Jan. 1982); *Petition of O'Neil,* N.T.S.B. Order No. EA–1785 (13 May 1982).

**15.** 45 Fed.Reg. 80296, 80300 (1980) (justifying its proposal as consistent with policy of the predecessor rule).

**16.** *Id.*

**17.** 47 Fed.Reg. 12698, 16308 (1982).

**18.** Petitioners clearly have standing to challenge the agency's action. They are pilots suffering from coronary heart disease who now hold certificates, *see infra* note 12, and who claim that their statutory rights to NTSB review will be denied if the amended rule goes into effect, *see infra* TAN 17–20. *See Association of Data Processing Service Orgs. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

Similarly, petitioners' claim is ripe for consideration. It presents purely legal issues "fit for judicial decision," *see Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), and the "problems generated by pre-enforcement review" in this case can hardly be said to "outweigh the hardship and interest" of petitioners in vindicating their statutory rights. *National Automatic Laundry and Cleaning Council v. Shultz,* 443 F.2d 689, 702 (D.C.Cir.1971).

**19.** Petitioners' Brief at 48–59.

**20.** Petitioners' Brief at 21–47, 59–66.

ever, to strike down the FAA's proposed amendment.

## A. *NTSB Review Proceedings*

Petitioners' position as to NTSB review may be summarized briefly as follows. Under the prior coronary heart disease rules, the NTSB had jurisdiction to decide in each case brought before it whether the airman's past medical history presented a significant risk that he would suffer a heart attack in the future. The proposed amendment strips the NTSB of this authority. The Board no longer decides whether there is a risk of future heart attack, but only whether, as the proposed amendment specifies, the pilot presents an established history of a diagnosis of coronary heart disease of a certain type—*i.e.,* disease that has required treatment or has been symptomatic or clinically significant. Thus, petitioners contend, by taking from the NTSB the responsibility to determine the actual probability of a future heart attack, the proposed amendments flout Congress' intent that the NTSB sit in review of FAA certification decisions.

■ The argument as we have stated it formulates correctly the procedural impact of the FAA amendment. It is unquestionable that the NTSB no longer has the power to decide what it could once decide—*i.e.,* that a pilot should be certified because he presents no significant risk of a future heart attack. The NTSB is no longer empowered to conduct an inquiry into the individual risk of myocardial infarction as presented on a case by case basis. Rather, it may only decide whether there has been, *in the past,* symptomatic coronary heart disease. Once it has made this determination as to past facts, its power of review—its power to grant certification over a deni-al of certification by the FAA—comes to an end.

■ But this change in the power of the NTSB is entirely consistent with the role of the Board as established by statute. True, Congress intended the NTSB to sit to provide independent review of FAA decisions in particular cases.[21] But Congress expressed no intent that the NTSB was to resolve any *particular* factual issues arising in the certification decision. Rather, the NTSB was to review FAA application of *whatever rules the FAA determined were to be applied in each individual case.*[22] When the role of the NTSB is defined in this way, it is clear that *any* change in FAA rules will work a corresponding change in the jurisdiction of the NTSB. But this carries no implication as to whether that change in the rules is valid or not. Rather, we must determine the substantive validity of the rules independently of any secondary effect that they might have on which factual issues are presented to the NTSB to decide on review. The statutory authorization contains no expression of intent on what determinations must be made in each case on a case by case basis rather than by general or prophylactic rules. We therefore turn to a consideration of the proposed amendment's substantive validity.

## B. *Review under the Arbitrary and Capricious Standard*

### 1. *Standard of Review.*

■ While the arbitrary and capricious standard requires us to determine whether the agency's decision is rational given the evidence presented to it in the record, the standard is a highly deferential one.[23] We need not decide whether there was "substantial evidence" in the record, as would be required to support a finding made after a

---

21. *See* 49 U.S.C. § 1422(b) (the NTSB "shall not be bound by findings of fact of the Administrator").

22. *See id.* (the NTSB "shall issue its decision as to *whether the airman meets the pertinent rules, regulations, or standards* . . . .") (emphasis added). This statutory provision for NTSB review contains no expression of intent on what determinations must be made in each

case on a case by case basis rather than by general or prophylactic rules.

23. *See Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974); *Natural Resources Defense Council, Inc. v. SEC,* 606 F.2d 1031, 1049 (D.C.Cir.1979).

formal proceeding, but only whether there is sufficient evidence to support the rationality of the agency's determination.[24] Moreover, the question before us is clearly one which calls particularly upon the agency's expertise. It poses technical questions both of fact—on the evaluation of complex scientific and medical evidence on the risks posed by coronary heart disease—and of policy—on the degree of risk of heart attack which may be tolerated among air pilots consistent with air traffic safety. When questions such as these are presented to us, we should be particularly hesitant in reversing the agency's determinations.[25]

■ Finally, we note that petitioners urge that the FAA's actions send "danger signals" that necessitate "intensive" scrutiny under the arbitrary and capricious standard.[26] In particular, petitioners allege that the new standard represents a sharp change in agency policy, that it was developed without reasoned analysis and supporting evidence, and that the FAA sought to camouflage the shift by referring to the regulation as an "interim change."[27] The amendment does not change the FAA's general policy, as applied in its certification decisions, that coronary heart disease is disqualifying because it may lead to a heart attack. It also does not reveal a desire to ignore Congress' will, but instead furthers Congress' statutory mandate to promote air safety.

■ However, the amendment is not, as the FAA seeks to label it, simply an "interim clarification" of the predecessor rule. The amendment limits the NTSB's ability to override, on a case by case basis, the FAA's across the board policy of disqualifying candidates with coronary heart disease. As we explained above, the prior rule required a determination in each certification case of whether the coronary heart disease may reasonably be expected to lead to a heart attack. The present amendment forces the NTSB to accept the FAA's irrebuttable *presumption* that certain medical facts, including any coronary condition that required treatment, automatically disqualify a pilot from receiving an unrestricted certification.

### 2. Application of the Arbitrary and Capricious Standard.

Thus, we must evaluate whether the evidence supports a change from a case by case evaluation of coronary risk to the *per se* rule the FAA has adopted. However, the FAA correctly reminds us of the limited scope of the proposed change. We have no occasion here to review the general policy with regard to the risk of heart attack which was adopted in 1958 and which is the premise both of the prior rule and in the FAA's proposed amendment.[28] As the FAA observed in adopting the rule, it considered comments suggesting a more radical change in this underlying policy—for example, by adopting regulations that would "state minimum requirements by listing specific parameters."[29] While the FAA has promulgated such standards in some areas, it has eschewed this approach as impractical in other areas because of the complexity and variability of medical factors involved. The proposed amendment continues past policy in this respect. More fundamentally, of course, the amendment does nothing to alter the basic presumption that a pilot who suffers significant coronary heart disease, which may be expected to lead to a heart attack, should not be flying, except under special restrictions.[30] As the FAA observes,

24. *See National Assoc. of Recycling Indus., Inc. v. ICC,* 627 F.2d 1328, 1334 (D.C.Cir.1980); *Ethyl Corp. v. EPA,* 541 F.2d 1, 33–37 (D.C.Cir.) (en banc), *cert. denied,* 426 U.S. 941, 96 S.Ct. 2663, 49 L.Ed.2d 394 (1976).

25. *Cf. A.G. Becker v. Board of Governors of the Fed. Reserve Sys.,* 693 F.2d 136, 140–42 (D.C. Cir.1982).

26. Petitioners' Brief at 18–21.

27. *Id.*

28. *See supra* TAN 7–10.

29. 47 Fed.Reg. 16298, 16304 (1982).

30. Notice of Proposed Rulemaking, 45 Fed.Reg. 80296, 80299–301 (1980).

these more radical changes in the underlying FAA policy are not before this court, and are rather the subject of a comprehensive reevaluation of FAA medical standards and certification now in progress.[31] Before us for review is only the change in policy enacted by the proposed amendment: the change from case by case prediction of the probability of *future* heart attack to a *per se* disqualification of those with a significant past history of heart disease.

■ We find that this change is rational and supported. It is based partially on generally accepted medical knowledge within the agency's expertise: that coronary heart disease is by nature progressive and that its rate of change is difficult to predict.[32] This uncertainty counsels toward granting the FAA some leeway in weighing the risks of heart disease. There is also sufficient evidence in the record that the pilots who fall under the proscription of the rule as amended pose a risk of heart attack significant enough to justify denying them an unrestricted license.[33] While there may be evidence to the contrary, it is for the FAA, not for us, to balance the evidence before it to determine the appropriate policy. Given the record support for the FAA position on the issue, we cannot reverse simply because some witnesses express views going the other way. And it is for the agency to make, within the limits of rationality, the policy determination as to what degree of risk is to be tolerated. Within the limits of our power to review, we cannot fault the agency's decision.

[7] Moreover, the agency did respond to the most frequently voiced criticism of the proposed amendment[34]—that it excluded air pilots who were asymptomatic or had only minimal signs of coronary heart disease.[35] In response to this criticism, the agency modified the amendment so that pilots whose cases were asymptomatic or clinically insignificant, and required no treatment, would be permitted to receive unrestricted certification.[36] The FAA also pointed out that applicants who were denied unrestricted certification under the amendment may still be certified through the discretionary special issuance procedures of section 67.19 (as amended).[37] Since the early 1960's, the FAA determined under a similar exemption process that over 1,300 persons with coronary heart disease could be certified subject to special restrictions and follow-up examinations.[38] By tailoring evaluation and certification restrictions to individual cases, the FAA is actually in accord with most of the medical authorities who advocated permitting pilots with heart disease to continue flying. Those commentators thought that certification should be granted only after a careful consideration in each case of appropriate restrictions on flying privileges and of required treatment and behavior modifications to palliate the effects of the disease.[39]

Because we find no deficiencies of procedure or substance in the FAA amendment, the order challenged is

*Affirmed.*

31. *See* 47 Fed.Reg. at 16302 ("Need for Review of Part 67"), 16304 ("List of Criteria or Tests").

32. *See Petition of Ewing,* 1 N.T.S.B. 1192, 1203 (1971), *reconsideration denied,* 1 N.T.S.B. 1190 (1971).

33. *See* Comment of Air Transport Association of America at 1, 4, JA at 193, 196; Comment of Helicopter Association of America, JA at 237; Comment of Dr. Leslie Eber, JA at 94; Remarks by Dr. H.R. Conwell, of Civil Aviation Medical Association, at 181, JA at 411.

34. *See, e.g.,* Comment of National Business Aircraft Ass'n at 7–9, JA at 102–04; Comment of Air Line Pilots Ass'n at 2–3, JA at 205–06.

35. The proposed rule excluded all pilots with a medical history or clinical diagnosis of "coronary heart disease, treated or untreated." 45 Fed.Reg. at 80300.

36. *See* 47 Fed.Reg. at 16302 (1982).

37. *Id.*

38. 45 Fed.Reg. 80296, 80300 (1980).

39. *E.g.,* Letter from Wm. Fremming Nielsen to the Federal Aviation Administration (2 Jan. 1981), JA at 178.