NATIONAL ASSOCIATION OF REGU-
LATORY UTILITY COMMISSION-
ERS, Petitioner,

v.

FEDERAL COMMUNICATIONS COM-
MISSION and United States of
America, Respondents,

Satellite Business Systems, ISA Commu-
nications Services, Inc., Aeronautical
Radio, Inc., American Telephone and
Telegraph Company, Missouri Public
Service Commission, Arizona Corpora-
tion Commission, New York State De-
partment of Public Service, Southern
Pacific Communications Company,
State of Michigan, et al., Pacific Tele-
phone and Telegraph Company, Moun-
tain States Telephone and Telegraph
Company, et al., New Jersey Bell Tele-
phone Company, Intervenors.

The PEOPLE OF the STATE OF CALI-
FORNIA and the Public Utilities Com-
mission of the State of California, Peti-
tioners,

v.

FEDERAL COMMUNICATIONS COM-
MISSION and United States of
America, Respondents,

Satellite Business Systems, ISA Commu-
nications Services, Inc., Aeronautical
Radio, Inc., American Telephone and
Telegraph Company, Southern Pacific
Communications Company, Mountain
States Telephone and Telegraph Com-
pany, et al., Pacific Telephone and Tele-
graph Company, New Jersey Bell Tele-
phone Company, Intervenors.

Nos. 83–1354, 83–1360.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 18, 1984.

Decided Oct. 26, 1984.

Jeffrey B. Thomas, Sacramento, Cal., with whom Janice E. Kerr and J. Calvin Simpson, San Francisco, Cal., were on the brief for petitioners, The People of the State of California, et al., in No. 83–1360.

Genevieve Morelli, Washington, D.C., with whom Paul Rodgers and Charles D. Gray, Washington, D.C., were on the brief for petitioner, NARUC, in No. 83–1354. Deborah A. DuPont, Washington, D.C., also entered an appearance for NARUC.

John E. Ingle, Deputy Associate Gen. Counsel, Washington, D.C., with whom Bruce E. Fein, Gen. Counsel, Daniel M.

Armstrong, Associate Gen. Counsel, and C. Grey Pash, Jr., Counsel, F.C.C., Barry Grossman and Nancy C. Garrison, Attys., U.S. Dept. of Justice, Washington, D.C., were on the brief for respondents in Nos. 83–1354 and 83–1360. Linda L. Oliver, Counsel, F.C.C., Washington, D.C., also entered an appearance for respondent F.C.C. Robert B. Nicholson, Atty., U.S. Dept. of Justice, Washington, D.C., also entered an appearance for respondent United States of America.

J. Laurent Scharff, Washington, D.C., with whom W. Theodore Pierson, Jr., Richard M. Singer, Washington, D.C., F. Thomas Tuttle, Kevin H. Cassidy, J. Manning Lee and Jeffrey H. Matsuura, McLean, Va., were on the brief for intervenor Satellite Business Systems in Nos. 83–1354 and 83–1360.

John W. Hunter, Richard E. Wiley, Danny E. Adams and Robert J. Butler, Washington, D.C., were on the brief for intervenor ISA Communications Services, Inc. in Nos. 83–1354 and 83–1360.

Robert W. Barker and Robert B. McKenna, Washington, D.C., were on the brief for intervenor Mountain States Telephone and Telegraph Company, et al. in Nos. 83–1354 and 83–1360.

James S. Hamasaki, Washington, D.C., was on the brief for intervenor Pacific Telephone and Telegraph Company in Nos. 83–1354 and 83–1360.

Louis J. Caruso, Sol. Gen., and R. Phillip Brown, Asst. Atty. Gen., State of Michigan, Lansing, Mich., were on the brief for intervenors State of Michigan, et al. in No. 83–1354. Ronald D. Eastman and Lynda S. Mounts, Washington, D.C., also entered appearances for State of Michigan, et al.

John L. Bartlett and Robert J. Butler, Washington, D.C., entered appearances for intervenor Aeronautical Radio, Inc. in Nos. 83–1354 and 83–1360.

Raymond F. Scully, Philadelphia, Pa., and Saul Fisher, Bedminster, N.J., entered appearances for intervenors American Telephone and Telegraph Company and New Jersey Bell Telephone Company in Nos. 83–1354 and 83–1360.

Eric A. Eisen, Washington, D.C., entered an appearance for intervenor Missouri Public Service Commission in No. 83–1354.

Mark P. Bresnahan, Washington, D.C., entered an appearance for intervenor Southern Pacific Communications Company in Nos. 83–1354 and 83–1360.

Timothy P. Sheehan, Albany, N.Y., entered an appearance for intervenor New York State Department of Public Services in No. 83–1354.

Lynwood J. Evans, Phoenix, Ariz., entered an appearance for intervenor Arizona Corporation Commission in No. 83–1354.

Before WILKEY, MIKVA and BORK, Circuit Judges.

Opinion for the Court filed by Circuit Judge BORK.

BORK, Circuit Judge:

The National Association of Regulatory Utility Commissioners ("NARUC"), et al., challenges a ruling of the Federal Communications Commission prohibiting restrictions on the resale and sharing of all intrastate Wide Area Telecommunications Services ("WATS"). NARUC claims that the FCC lacks authority under the Communications Act of 1934, 47 U.S.C. § 151 *et seq.* (1982) (the "Act"), and relevant case law to regulate the use of an intrastate WATS service, even when that service is used as part of an interstate communications network. NARUC also claims that the FCC acted arbitrarily and capriciously because it failed to make new findings of fact to support its decision in addition to findings it had made in 1980. We affirm the FCC's decision.

I.

The American Telephone and Telegraph Company ("AT & T") operates an interstate telecommunications network and offers several different forms of long distance service. Long Distance Message Telecommunications Service ("MTS") is the ordi-

nary long distance service, and it allows users both to place and receive calls. Charges for MTS calls are based on use with a toll being assessed for each call. In contrast, AT & T's WATS subscribers are usually entitled to unlimited use of the WATS service in exchange for a fixed fee. Accordingly, WATS is widely used by businesses and other high volume consumers in the long distance telecommunications market.

The WATS and MTS systems are both heavily regulated by the FCC, which has substantial authority over the entire telecommunications industry. The Commission's authority allows it to control entry into and exit from the industry, to require just and reasonable rates, and to mandate interconnections between carriers. 47 U.S.C. §§ 214(a), 201(a) & (b) (1982). Since the early 1960's, the telephone carriers have been allowed to offer interstate WATS systems through tariffs on file with the FCC. Intrastate WATS systems on the other hand have been made available only subject to tariffs approved by the appropriate state regulatory commissions.

For many years AT & T and the other long distance carriers limited resale and sharing of their services through restrictions in their tariffs. As a result, it was illegal for any entity to subscribe to a long distance service and then, after adding value, resell it for a profit. *See Report & Order*, 60 F.C.C.2d 261, 271 (1976). Similarly, it was also illegal for several consumers to combine and use a single long distance service collectively with each consumer paying according to his pro rata usage. *See* 60 F.C.C.2d at 263. Both the practices of resale and sharing were viewed as threatening because they would have undermined AT & T's legal monopoly as the sole provider of long distance service.

Beginning in 1974, the FCC became concerned that the prohibition of resale and sharing was working to segment markets and sustain harmful price discrimination. Prohibition was having this effect because it prevented resellers and sharers from putting pressure on AT & T to help insure that

its rates were cost-based. Such pressure might have been generated if arbitragers had been allowed to purchase discounted services such as WATS and then resell them to smaller users as a substitute for MTS. In that situation, AT & T would be forced to reset its long distance WATS and MTS rates to make them cost-based.

In light of these concerns, the FCC commenced a proceeding that led to a 1976 decision outlawing tariff restrictions on the resale and sharing of long distance private line services. *See Resale & Shared Use, Notice of Inquiry & Proposed Rulemaking*, 47 F.C.C.2d 644, 48 F.C.C.2d 1077 (1974), *Report & Order*, 60 F.C.C.2d 261 (1976), *Reconsideration Order*, 62 F.C.C.2d 588 (1977), *aff'd, American Telephone & Telegraph Co. v. FCC*, 572 F.2d 17 (2d Cir.), *cert. denied*, 439 U.S. 875, 99 S.Ct. 213, 58 L.Ed.2d 190 (1978). These services differ from MTS and WATS in that they are made available in bulk at low rates for consumers with substantial long distance communications needs between two or more selected locations. In its 1976 decision, the Commission expressly left open the question of the lawfulness of resale and sharing restrictions on MTS and WATS, explaining that issues involving those services had not been adequately addressed in the record. In an opinion by Judge Meskill, the Second Circuit sustained the Commission's action after accepting its conclusion that resale and sharing would encourage cost-related pricing, thus leading to more efficient utilization of communications facilities. *American Telephone & Telegraph Co. v. FCC*, 572 F.2d at 23.

On July 27, 1979, MCI Telecommunications Corp. ("MCI") petitioned the FCC to institute a new rulemaking that would extend the 1976 decision to AT & T's interstate WATS services. Specifically, MCI asked the Commission to outlaw all of AT & T's prohibitions on resale and sharing in its WATS and MTS tariffs in the interstate market. On December 18, 1980, the Commission granted MCI's petition after concluding that the tariff restrictions on resale and sharing were "unjust, unreasonable,

... discriminatory, and hence unlawful under Sections 201(b) and 202(a) of the Communications Act." *Resale & Shared Use,* 83 F.C.C.2d 167, 168 (1980). The Commission based its decision in part on an extensive analysis of the economic impact of legalizing resale and sharing. The Commission concluded that resale and sharing would reduce harmful price discrimination by pressuring AT & T to make its WATS and MTS rates cost-based. *Id.* at 175–76.

On June 7, 1982, Satellite Business Systems ("SBS") commenced the instant litigation by asking the Commission to clarify the scope of its 1980 decision in *Resale & Shared Use,* 83 F.C.C.2d 167. Specifically, SBS sought a Declaratory Ruling that all state tariff prohibitions against resale and sharing of intrastate WATS were "unlawful ... when these services are used by an interstate carrier for the termination of interstate services." Joint Appendix ("J.A.") at 1. SBS, an intervenor in this appeal, is a licensed interstate communications common carrier. Among other services, SBS offers voice services that compete with AT & T's WATS and MTS offerings.

Primarily, SBS provides voice services through its own earth stations and satellites. However, it is not economically feasible for SBS to obtain enough earth stations to gain access to each of the approximately 17,000 local exchanges in the country. J.A. at 4. Accordingly, when SBS customers place calls to areas where SBS does not have earth stations, SBS leases services from the former local Bell System Operating Companies ("BSOCs") and then resells them to its customers. However, the prohibitions on resale and sharing in the state tariffs of most BSOCs prevent SBS from using intrastate WATS for this

purpose. As a result, SBS is often required to route its calls to an earth station far outside the state to which the call is going. SBS then uses an interstate WATS system to deliver the call, since the Commission's 1980 order unquestionably permits the resale of interstate WATS. According to SBS, this method is not merely inefficient and expensive, but also frequently causes signal quality to diminish.[1] Other interstate communications carriers such as MCI and Western Union Telegraph Co. agree with SBS that service could be improved by legalizing resale of intrastate WATS.

SBS claimed in its petition to the FCC that both judicial and agency precedent gave the Commission jurisdiction over all interstate communications even if they were made on physically intrastate WATS lines. As SBS noted, the "key issue in determining the jurisdiction over facilities used to provide service is the nature of the communications which pass[ ] through the facility, and not the physical location of the lines." J.A. at 6, *quoting New York Telephone Co.,* 76 F.C.C.2d 349, 352, *aff'd sub nom. New York Telephone Co. v. FCC,* 631 F.2d 1059 (2d Cir.1980). Moreover, SBS claimed that the economic benefits made available by the Commission's 1980 decision in *Resale & Shared Use* would be extended if the Commission legalized the resale of intrastate WATS services used as part of an interstate communications network. SBS claimed that "so long as [it was] prohibited from using intrastate WATS ... it [would] be forced to utilize expensive and ... inefficient routing patterns" to the detriment of its interstate customers. J.A. at 12.

---

1. In its petition to the FCC, SBS offered the following example of the inefficiencies arising from its inability to obtain intrastate WATS service to terminate its interstate communications. To complete calls from New York City (where SBS has an earth station) to Flagstaff, Arizona (where it does not have an earth station), SBS had to route the calls first to Los Angeles (the site of the SBS earth station outside of Arizona closest to Flagstaff) and then "back

haul" them some 400 miles over resold interstate WATS. This circuitous routing could have been avoided, however, if SBS were allowed to resell intrastate WATS service in Arizona. Instead of routing the calls to Los Angeles, SBS would then have been able to transmit them to its Phoenix, Arizona earth station and relay them from that point over intrastate WATS lines to Flagstaff, 110 miles away.

On June 15, 1982, the FCC announced that it was seeking public comments on SBS's petition. A number of state regulatory commissions and NARUC[2] generally opposed the petition on the grounds that intrastate WATS, even when used as part of an interstate communications service, was explicitly exempted from FCC jurisdiction by sections 2(b) and 221(b) of the Communications Act of 1934, 47 U.S.C. §§ 152(b) and 221(b) (1982).[3] Opposing comments to SBS's petition were also filed by AT & T on behalf of the BSOCs. AT & T agreed that the FCC had jurisdiction over the WATS service in question but urged the Commission to let the states legalize resale and sharing at their own pace. Finally, MCI, Western Union Telegraph Co., and various other interstate carriers and users filed comments in support of SBS's petition. MCI commented that "there can be no question that the Commission does have jurisdiction in this matter" and accordingly it urged the FCC to "issue the required declaratory ruling." J.A. at 54–55.

On February 4, 1983, the Commission issued a Memorandum Opinion and Order granting SBS's petition. J.A. at 168. The Commission first asserted that it had jurisdiction over intrastate WATS systems where they are used to complete interstate communications. In the Commission's view, it is "by now well-established" that "jurisdiction turns on the nature of the communications, rather than the location of the facilities links through which they pass." *Id.* at 172. In this case, the Commission observed that there was no dispute "that the intrastate WATS connections sought here would be used to terminate communications which originate in other states." *Id.* Accordingly, the Commission concluded that it could assert jurisdiction.

Upon reaching the merits, the Commission based its decision entirely on the factual record developed in the 1980 proceeding on *Resale & Shared Use*, 83 F.C.C.2d 167. Thus, the Commission explained that although its 1980 decision had not "technically" covered resale restrictions in state tariffs, the Commission had intended by that decision to outlaw all resale and sharing restrictions affecting interstate communications. The Commission went on to note that none of the comments opposing SBS's petition had challenged the application of its 1980 economic analysis to the instant case. Accordingly, the Commission saw no reason to believe that the benefits that had resulted from its 1980 decision would not also be present with the limited resale and sharing of intrastate WATS. The Commission, therefore, rejected AT & T's suggestion that it defer to the states and substantially granted SBS's petition.[4] The Com-

---

2. NARUC is a quasi-governmental organization that includes representatives of all fifty states, the District of Columbia, Puerto Rico, and the Virgin Islands. Its membership represents all of the various state officials responsible for regulating communication common carriers.

3. 47 U.S.C. §§ 152(b) and 221(b) provide in relevant part:

Section 152(b)
Except as provided in section 224 of this title and subject to the provisions of section 301 of this title, nothing in this chapter shall be construed to apply or to give the Commission jurisdiction with respect to (1) charges, classifications, practices, services, facilities, or regulations for or in connection with intrastate communication service by wire or radio of any carrier,...
Section 221(b)
[N]othing in this chapter shall be construed to apply, or to give the Commission jurisdiction, with respect to charges, classifications,

practices, services, facilities, or regulations for or in connection with wire, mobile, or point-to-point radio telephone exchange service, or any combination thereof, even though a portion of such exchange service constitutes interstate or foreign communication, in any case where such matters are subject to regulation by a State commission or by local governmental authority.

4. The Commission concluded that its 1980 decision precluded a policy of deferring to the states to allow them to legalize resale and sharing in their intrastate WATS tariffs. In 1980, the Commission recalled that it had opted for immediate legalization of unlimited resale and sharing after a short adjustment period. The Commission concluded that AT & T's proposed deferral in this case would undermine its goal of swiftly realizing the full benefits of resale and sharing of interstate services and hence would be contrary to the public interest. J.A. at 173.

The Commission denied a portion of SBS's petition that had sought an FCC order directing

mission emphasized, however, that its decision did "not extend to restrictions which pertain solely to the provision of WATS used in intrastate communication." J.A. at 174 n. 10.

On April 4, 1983, and without seeking reconsideration, NARUC petitioned this court for review of the Commission's decision. The People of the State of California and the Public Utilities Commission of the State of California also petitioned for review, and the various petitions were consolidated. In addition, a number of parties intervened. We have jurisdiction pursuant to 47 U.S.C. § 402 (1982), 28 U.S.C. § 2342(1) (1982), and Fed.R.App.P. 15.

## II.

NARUC's primary argument on appeal is that the Commission erred in concluding that it had jurisdiction over the resale and sharing of intrastate WATS systems. NARUC principally relies on sections 152(b) and 221(b) of the Communications Act which prohibit the FCC from regulating an intrastate communications network. NARUC claims that the Commission has exceeded its authority under the relevant case law since here the use of intrastate facilities was not absolutely required to complete an interstate communication. Accordingly, NARUC believes the Commission has encroached to an unprecedented degree on the intrastate regulatory sphere.

NARUC's second complaint is that the Commission acted arbitrarily and capriciously by failing to make specific, detailed findings of fact in the instant proceeding. NARUC objects particularly to the Commission's attempt to "borrow" the factual findings of its 1980 *Resale & Shared Use* decision. NARUC claims those findings are irrelevant because they concerned an interstate network rather than the totally intrastate system at issue here. Accordingly, NARUC claims the Commission's decision is not supported by the record.

We consider first the jurisdictional issue and then the lawfulness of the Commission's exercise of its statutory authority. For the reasons set forth below, we affirm the FCC's decision in all respects.

## A.

■■■ The Communications Act of 1934 creates a dual regulatory structure for interstate and intrastate wire communications. Interstate communications are totally entrusted to the FCC which is charged with providing "a rapid, efficient, Nationwide, and world-wide wire ... communication service." 47 U.S.C. § 151 (1982). Purely intrastate communications, on the other hand, are to be regulated by the states. 47 U.S.C. § 152(b) (1982). The dividing line between the regulatory jurisdictions of the FCC and states depends on "the nature of the communications which pass through the facilities [and not on] the physical location of the lines." *California v. FCC*, 567 F.2d 84, 86 (D.C.Cir.1977) (per curiam), *cert. denied*, 434 U.S. 1010 (1978), *quoting* 56 F.C.C.2d 14, 21 (1975). *See also National Association of Regulatory Utility Commissioners v. FCC*, 737 F.2d 1095, 1114–15 (D.C.Cir.1984); *Computer & Communications Industry Association v. FCC*, 693 F.2d 198, 214–18 (D.C.Cir.1982), *cert. denied*, 461 U.S. 938, 103 S.Ct. 2109, 77 L.Ed.2d 313 (1983). Thus purely intrastate facilities and services used to complete even a single interstate call may become subject to FCC regulation to the extent of their interstate use. Every court that has considered the matter has emphasized that the nature of the communications is determinative rather than the physical location of the facilities used. *United States v. Southwestern Cable Co.*, 392 U.S. 157, 168–69, 88 S.Ct. 1994, 2000, 20 L.Ed.2d 1001 (1968); *New York Telephone Co. v. FCC*, 631 F.2d 1059, 1065–66 (2d Cir.1980); *California v. FCC*, 567 F.2d at 86; *General Telephone Co. v. FCC*, 413 F.2d 390, 401 (D.C.Cir.), *cert. denied*, 396 U.S. 888, 90 S.Ct. 173, 24 L.Ed.2d 163 (1969). Nonetheless, NARUC claims that the FCC has exceeded its jurisdiction in this case because

the BSOCs to offer intrastate WATS service at particular terms or rates. SBS has not cross-petitioned this court for review of the partial denial of its petition.

it has chosen to regulate a purely intrastate WATS facility.

NARUC distinguishes the cases cited above by arguing that they all involved situations where the use of state facilities was absolutely required to complete an interstate communication. In those situations, NARUC claims that FCC jurisdiction was warranted because state regulation "substantially affected" one's ability even to complete an interstate telephone call. *North Carolina Utilities Commission v. FCC*, 537 F.2d 787, 793 (4th Cir.), *cert. denied*, 429 U.S. 1027, 97 S.Ct. 651, 50 L.Ed.2d 631 (1976) *(NCUC I)*. In this case NARUC argues that state regulation creates no absolute impediment to completing an interstate call. Instead, the state regulations only increase the cost of making interstate calls while diminishing signal quality.

We reject NARUC's claim that the FCC lacks jurisdiction over some interstate wire communications merely because the use of an intrastate facility is not absolutely "required" to complete the call. Implicit in NARUC's argument is a rejection of our holding in *California v. FCC* that the FCC's regulatory jurisdiction depends solely on the interstate nature of the communications at issue. 567 F.2d at 86. NARUC continues to attach significance to the fact that this case involves a facility and service that is located within a single state. Every court that has considered the matter, however, has held that the physically intrastate location of that service does not preclude FCC jurisdiction so long as the service is used for the completion of interstate communications.

■ This conclusion is obviously correct for at least three reasons. First, the Communications Act empowers the FCC to regulate "all interstate and foreign communication by wire or radio." 47 U.S.C.

§ 152(a). The Act broadly defines "wire communications" to include:

the transmission of ... sounds of all kinds by aid of wire, cable, or other like connection *between the points of origin and reception of such transmission,* including all instrumentalities, facilities, apparatus, and services ... incidental to such transmission.

47 U.S.C. § 153(a) (1982) (emphasis added). The Communications Act thus explicitly creates FCC jurisdiction over all "facilities" and "services" used at any point in completing an interstate telephone call. On its face then, the Act defines the FCC's jurisdiction in terms of the interstate nature of a communication. The Act attaches no significance to the physical location of the facilities used.

■ Second, the very structure of the Communications Act and the relationship of its terms suggests that the physical location of telecommunications facilities is unimportant. Thus, the Act confers broad powers on the FCC to regulate all aspects of the interstate telecommunications market. 47 U.S.C. §§ 201–205 (1982). These powers could be totally frustrated by contrary state regulation if the Commission were barred from regulating any facility that carried interstate calls but was physically intrastate. This is especially the case since almost all telecommunications facilities are physically intrastate. As we have said before, Congress did not intend to allow "inconsistent state regulations [to] frustrate [its] goal of developing a 'unified national communications service.'" *California v. FCC*, 567 F.2d at 86. We thus find implausible a reading of the Act that eviscerates the Commission's broad regulatory powers by focusing on the location of telecommunication facilities. It may be significant in this regard that Congress has provided a procedure under section 410(c) of the Act to guide FCC regulation of the use of facilities that serve both the interstate and intrastate markets.[5] This proce-

---

**5.** More particularly, § 410(c) of the Act allows the Commission to refer any matter "relating to common carrier communications of joint Federal-State concern, to a Federal-State Joint Board" which then prepares a recommended FCC deci-

sion. It is hard to see what purpose § 410(c) would serve if the Commission's jurisdiction depended at all on whether a facility was physically intrastate.

dure appears to recognize national primacy by leaving the FCC discretion to follow or ignore state recommendations and requests.

Third, the FCC has for years exercised jurisdiction over intrastate facilities that were partially used to complete interstate telephone calls. *See* Note, *Separating the Jurisdictional Authorities of State and Federal Administrators in the Regulation of the Physical Equipment Within the Nation's Telephone Network*, 8 U.Tol. L.Rev. 733, 749–58 (1977). Thus, in 1953, the Commission observed that if it "exercise[d] its jurisdiction only where the telephone facilities in question were exclusively interstate in character, it would result in virtually complete abdication from the field of telephone regulation." *Katz v. AT & T*, 43 F.C.C. 1328, 1332 (1953). Congress has obviously been aware that for nearly forty years the Commission has claimed jurisdiction over some intrastate facilities. Congressional acquiescence in these claims is symbolized by the Joint Federal-State Board procedure of section 410(c). Congress would not have created this procedure in 1971 if it had been concerned that the FCC was inappropriately exercising jurisdiction over matters committed to state regulation. The Joint Board procedure actually augmented the Commission's powers in part by recognizing national primacy. *NCUC I*, 537 F.2d at 795.

■ NARUC responds to these arguments by pointing to sections 152(b) and 221(b) of the Act which guarantee state regulatory control over intrastate communications. The construction of these sections is well settled, however, and it is clear that they do not limit FCC regulation over interstate calls. *See NCUC I*, 537 F.2d 787; *North Carolina Utilities Commission v. FCC*, 552 F.2d 1036 (4th Cir.), *cert. denied*, 434 U.S. 874, 98 S.Ct. 222, 54 L.Ed.2d 154 (1977) (*NCUC II*); *New York Telephone Co. v. FCC*, 631 F.2d 1059; *California v. FCC*, 567 F.2d 84. Section 152(b) merely confirms that the States retain jurisdiction over purely intrastate calls notwithstanding the economic effect such

State jurisdiction might have on the interstate market. Section 152(b) thus prevents the application of the so-called *Shreveport* rate decision, *Houston, E & W Texas Ry. v. United States*, 234 U.S. 342, 34 S.Ct. 833, 58 L.Ed. 1341 (1914) (Hughes, J.), to the communications field. *Computer & Communications Industry Association v. FCC*, 693 F.2d at 214–16. The section does not go beyond this to grant the states jurisdiction over all physically intrastate facilities. Were it to do so it would render the rest of the Communications Act a nullity.

■ Similarly, section 221(b) affords no relief to petitioners. Although the language of the section is sweeping, two prior opinions of this court have explicitly limited it to its legislative history. *National Association of Regulatory Utility Commissioners v. FCC*, 737 F.2d at 1113 n. 21; *Computer & Communications Industry Association v. FCC*, 693 F.2d at 216–17. We, of course, are bound by those determinations and thus conclude that section 221(b) "was merely intended to preserve state regulation of local exchanges that happened to overlap state lines." 693 F.2d at 216. Nothing in the section as interpreted by four circuits limits the FCC's jurisdiction over intrastate facilities used to complete interstate calls. *See NCUC I*, 537 F.2d at 795; *NCUC II*, 552 F.2d at 1045; *Puerto Rico Telephone Co. v. FCC*, 553 F.2d 694, 698–99 (1st Cir.1977); *New York Telephone Co. v. FCC*, 631 F.2d at 1064–65.

Application of these legal principles to the instant controversy indicates that the Commission clearly had jurisdiction to regulate the resale and sharing of intrastate WATS service as it did. First, it is "undisputed that the intrastate WATS connections sought here would be used to terminate communications which originate in other states." *In re American Telephone & Telegraph Co. & the Bell System Operating Cos.*, FCC 83–40–32674, mem. op. at 5 (Jan. 27, 1983); J.A. at 172. Hence, there can be no question as to whether the ruling affects communications that are interstate

in nature. Second, it is undisputed here that the ruling "does not extend to restrictions which pertain solely to the provision of WATS used in intrastate communication." *Id.*, mem. op. at 7 n. 10; J.A. at 174. Hence, the FCC is clearly not regulating purely intrastate communications in violation of section 152(b) and section 221(b). And third, we have concluded that the FCC has broad power to regulate physically intrastate facilities where they are used for interstate communications. *See generally* Comment, *An Assessment of State and Federal Jurisdiction to Regulate Access Charges After the AT & T Divestiture*, 1983 B.Y.U.L.Rev. 376. As we have seen, the purpose of the Communications Act would be frustrated by any other conclusion.

■ We therefore reject NARUC's contention that the FCC cannot strike down state impediments to interstate wire communications unless the use of an intrastate facility is absolutely required to complete the call. NARUC is wrong in believing that its impediments to interstate communications somehow become tolerable when they only increase costs while diminishing signal quality. Such impediments "substantially affect" both the conduct and development of interstate communications. *NCUC I*, 537 F.2d at 793. They also infringe on the FCC's jurisdiction over interstate calls and offend the very purposes of the Communications Act which seeks to create "a rapid, efficient, Nation-wide ... communication service." 47 U.S.C. § 151 (1982). If the Act's goal of providing uniform, efficient service is ever to be realized, the Commission must be free to strike down the costly and inefficient burdens on

interstate communications which are sometimes imposed by state regulation.

■ For all of the reasons stated above, we conclude that the Commission acted within its jurisdiction in granting SBS's petition.[6]

### B.

In addition to their jurisdictional challenge, petitioners allege that the FCC acted arbitrarily and capriciously because it failed to make new findings of fact to support its decision in addition to the findings made in 1980. We disagree with petitioners and believe that the FCC has proceeded in a legitimate and reasonable manner.

From 1974 to 1980 the Commission extensively considered the issue of resale and sharing of communications service. *See supra* pp. 1495–1496. The Commission instituted two separate proceedings concerning this issue and successfully defended its conclusions on appeal. *American Telephone & Telegraph Co. v. FCC*, 572 F.2d 17. Based on these proceedings, the FCC concluded that a prohibition on resale and sharing restrictions would lead to a number of benefits, including the following:

> increased entry and competition by new entrants; numerous new and specialized service offerings by telecommunications managers, OCCs, and other entities; a greater possibility of innovation ... with less waste of available communications facilities[;] the creation of demand for new services ..., [and] pressures upon established carriers to align their rates with costs....

*Resale & Shared Use*, 83 F.C.C.2d at 185. Petitioners do not dispute the Commission's

---

**6.** In an argument related to their jurisdictional claim, petitioners also assert that the Commission has failed here to satisfy the appropriate standards to justify federal preemption of an otherwise lawful state regulation. *See, e.g., Fidelity Federal Savings & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152–54, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982); *Conference of State Bank Supervisors v. Conover*, 710 F.2d 878, 882 (D.C.Cir.1983). We do not agree, however, that there is any doubt concerning preemption in

this case. Here the Commission has regulated *exclusively* interstate communications which are placed explicitly within the sphere of federal jurisdiction by the plain language of the Communications Act. This case is thus even easier than cases like *NCUC I*, 537 F.2d 787, where the FCC preempted otherwise lawful state regulation of an intrastate service because the interstate and intrastate functions of that service could not be technically and practically separated.

assessment of the benefits that have resulted from the resale and sharing of interstate WATS.

In the ruling under review, however, the FCC acknowledged that its 1980 ruling had not "technically" covered "the case of resale and sharing restrictions on intrastate WATS used to terminate interstate communications." Mem. op. at 1495; J.A. at 173. Nevertheless, the Commission stated that it had intended in 1980 to outlaw all prohibitions on resale and sharing "on any form of domestic public switched network service used in interstate communication." *Id.* Thus, in this case the Commission sought to clarify retroactively the sweep of its 1980 Report and Order. The Commission did not, however, base a totally new rulemaking on a record borrowed from an earlier proceeding.

At the outset, we note that the FCC's interpretation of its own policies and regulations is entitled to "great deference." *Washington Association for Television & Children v. FCC*, 712 F.2d 677, 684–85 (D.C.Cir.1983). *See also Schwartz v. Helms*, 712 F.2d 633, 637–38 (D.C.Cir.1983). As the Supreme Court explained in *Udall v. Tallman*, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965):

> When the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in order. "[A] court must necessarily look to the administrative construction of the regulation if the meaning of the words used is in doubt .... [T]he ... administrative interpretation [is] of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Bowles v. Seminole Rock Co.*, 325 U.S. 410, 413–14 [65 S.Ct. 1215, 1217, 89 L.Ed. 1700].

*Id.* at 16–17, 85 S.Ct. at 801. Since in this case the Commission claims to be interpreting the scope of its 1980 ruling, we are bound to follow that interpretation unless it is plainly erroneous or inconsistent with the ruling itself. In any event, the petitioners have the burden of proof in establishing that the Commission acted "arbitrarily and capriciously" in relying on the 1980 factual record. *See* 5 U.S.C. § 706(2)(A) (1982). The "standard of review is a narrow one," and the courts are "not empowered to substitute [their] judgment for that of the agency." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971).

We do not find the ruling under review to be arbitrary and capricious. The 1980 factual record, relied on by the Commission, clearly supports the decision in this case. Indeed, petitioners have been unable to advance even a single meritorious argument as to why the 1980 record is not controlling. Thus, NARUC observes that the WATS service covered here is uniquely intrastate. Nonetheless, it fails to explain why this should in any way affect the economic analysis underlying the FCC's 1980 ruling. NARUC also objects to SBS's failure to introduce specific evidence of benefits from the resale of intrastate WATS. Nonetheless, it is unable itself to point to any valid evidence of public detriment as required by *Hush-a-Phone Corp. v. United States*, 238 F.2d 266, 269 (D.C. Cir.1956). Finally, NARUC attempts to manufacture a public detriment claim by noting that intrastate WATS resale would require revision in current state tariffs because such tariffs are not cost-based. It is said that this would be expensive and disruptive. *See* Opposition of American Telephone & Telegraph Co. at ¶¶ 4–8 (filed July 15, 1982); J.A. at 36–43. However, the Commission has already correctly held that the revision of tariffs to make them cost-based actually serves the public interest and is in no way detrimental. *See Resale & Shared Use*, 83 F.C.C.2d 167. In sum, petitioners have advanced no substantial arguments as to why the factual record that supported the Commission's 1980 order is inapplicable to the present case.

Under these circumstances, we cannot find the ruling under review to be either plainly erroneous or inconsistent with the Commission's 1980 ruling. *Udall v. Tallman*, 380 U.S. at 16–17, 85 S.Ct. at 801. Nor can we find that the petitioners

have introduced *any* evidence disproving the Commission's plausible claim that its 1980 factual findings control this case. The decision of the Commission is therefore supported by the record; *see Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co.,* 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983); and we affirm in all respects. We have considered the petitioners' additional claims and find them to be without merit.[7]

*Affirmed.*

7.  California argues, for example, that the Commission's order permits unreasonably discriminatory access to local exchanges in a manner that is inconsistent with other FCC policies. This claim is meritless, however, since California has not yet exhausted its remedies before the Commission as is required by our decision in *Washington Ass'n for Television & Children v. FCC,* 712 F.2d at 681.

Similarly, California has also claimed that the FCC arbitrarily and capriciously failed to consider the harmful effects of its ruling on intrastate ratepayers. We conclude that the Commission did not ignore this issue; *see* J.A. at 173–74; and that the allegedly harmful effects were speculative and factually unsupported.