**AT & T COMMUNICATIONS OF the MOUNTAIN STATES, INC., Plaintiff,**

**v.**

**The PUBLIC SERVICE COMMISSION of Wyoming, the Mountain States Telephone and Telegraph Company, and United Telephone Company of the West, Defendants.**

**No. C85–0254–B.**

United States District Court, D. Wyoming.

Nov. 26, 1985.

William A. Davis, II, Rebecca B. Decook, Denver, Colo., W. Perry Dray, Cheyenne, Wyo., for plaintiff.

Roger C. Fransen, Asst. Atty. Gen., State of Wyo., Cheyenne, Wyo., for Public Serv. Com'n.

W. Douglas Hickey, Cheyenne, Wyo., for Mt. States.

Ann McElhenny, J. Richard Smith, Overland Park, Kan., Keith Kautz, Sawyer, Warren and Kautz, Torrington, Wyo., for United Telephone.

Francis Lee Pico, Asst. U.S. Atty., Dist. of Wyo., Cheyenne, Wyo., for F.C.C. amicus curiae; Jack D. Smith, John E. Ingle, F.C.C. Washington, D.C., on briefs.

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

BRIMMER, Chief Judge.

The above-entitled matter came before the Court pursuant to cross-motions for summary judgment. The Court, having reviewed the pleadings and the evidence offered, and now being fully advised in the premises, FINDS and ORDERS as follows:

This case arises from a February 21, 1985 ruling by the Public Service Commission of Wyoming (PSC) that AT & T Communications of the Mountain States, Inc., (AT & T) must pay a tariff to Mountain Bell and United Telephone of one percent of all its billings, for both interstate and intrastate calls, to cover the costs of local disconnect service. The PSC contends that the February 21 Order is well within its jurisdiction. AT & T counters that the Order exceeds the jurisdiction of the PSC and conflicts with orders of the Federal Communications Commission (FCC), and thus violates the Supremacy Clause of the Constitution.

The parties have agreed that the issues in this case should be decided by the Court as a matter of law. The parties have filed a Joint Stipulation of Facts, which provides:

"1. AT & T Communications of the Mountain States, Inc. ('AT & T Communications') is a corporation organized and existing under the laws of the State of Colorado and authorized to do business in the State of Wyoming. Its principal offices are located at 1875 Lawrence Street, Denver, Colorado 80202.

"2. The Public Service Commission of Wyoming ('Wyoming Commission') is a legislatively created state agency with a statutory mandate to regulate and supervise public utilities within the state, as provided in Wyoming Statutes, Sections 37–1–101(a)(vi)(H) and 37–2–112. Defendants Mountain States Telephone and Telegraph Company ('Mountain Bell') and United Telephone Company of the West ('United') are public utilities regulated by the Wyoming Commission.

"3. Jurisdiction over this matter arises under the Constitution of the United States, Article I, Section 8, Clause 3 and Article VI, Section 2; and under the United States Code, Title 28, Sections 1331, 1651, and 2201.

"4. AT&T Communications is engaged in the business of providing certain interex-

change telecommunications services on an intrastate and interstate basis in Wyoming. With respect to its intrastate operations, AT&T Communications is subject to the regulatory authority of the Wyoming Commission. In this regard, AT&T Communications has on file with the Wyoming Commission tariffs relating to its intrastate operations. AT&T Communications provides interstate telecommunications services pursuant to the regulatory authority and oversight of the Federal Communications Commission ('FCC'). Tariffs on file with the FCC govern the provision of interstate telecommunications services by AT&T.

"5. The divestiture of the former Bell System transpired on January 1, 1984, pursuant to the Modification of Final Judgment ('MFJ') in *United States v. AT&T*, entered by the U.S. District Court for the District of Columbia on August 24, 1982, and the court-approved Plan of Reorganization ('Plan'). Following divestiture, the former Bell Operating Companies provide service within geographical areas known as Local Access and Transport Areas ('LATAs'); service between LATAs is provided by AT&T Communications and by other interLATA carriers, who obtain access to the local exchange carriers' facilities to enable customers to originate and terminate interLATA calls. The State of Wyoming has a single LATA. However, AT&T Communications provides intrastate service in Wyoming between the Wyoming LATA and portions of other states' LATAs which are situated within Wyoming's border.

"6. The MFJ authorized the Bell Operating Companies to provide billing and collection services to AT&T following divestiture. Under the MFJ and Plan, the assets, facilities and personnel within the Bell System necessary to the provision of billing and collection service were transferred to (or remained with) the former Bell Operating Companies, such as Mountain Bell.

"7. AT&T Communications does not currently have the capability generally to perform billing functions for its customers; thus, it is dependent on exchange carriers, such as Mountain Bell and United, to provide such services. Billing and collection services are provided for AT&T Communications' interstate services pursuant to the interstate 'Access Service' tariffs filed with the Federal Communications Commission by the divested Bell Operating Companies, including Mountain Bell. A copy of Section 8 ('Billing and Collection Services') of the Mountain Bell federal Access Service tariff is included in the Appendix as Exhibit A. Such billing and collection services (intrastate as well as interstate) are also governed by a contractual agreement between Mountain Bell and AT&T Communications. A copy of the agreement is included in the Appendix as Exhibit B. The FCC, pursuant to Part 69 of its Rules, 47 C.F.R. § 69.3, has, in addition, required independent telephone companies, such as United, to file federal Access Service tariffs. United provides billing and collection services to AT&T Communications under its interstate Access Service tariffs; a copy of Section 8 ('Billing and Collection Services') of this tariff is included in the Appendix as Exhibit C.

"8. In connection with the collection portion of the billing and collection process, Mountain Bell and United purchase from AT&T Communications the accounts receivable generated from interstate billings under AT&T's interstate tariffs filed with the FCC. Mountain Bell and United collect on these receivables from customers and retain the proceeds. The payments made by Mountain Bell and United to AT&T Communications for the receivables are subject to an adjustment to reflect the 'uncollectible' rate for the customer accounts; under the adjustment formula, these payments are inversely related to the rate of uncollectibility.

"9. The FCC addressed generally the Access Service tariffs submitted by the exchange carriers in its Memorandum Opinion and Order released on February 17, 1984, in CC Docket No. 83–1145, Phase I, *In the Matter of Investigation of Access and Divestiture Related Tariffs*. A copy of pertinent portions of this order is included in the Appendix as Exhibit D.

"10. In a subsequent order released on April 27, 1984 in CC Docket No. 83–1145, the FCC required deletion of the 'local service cut-off' provisions of the Access Service tariffs but provided that exchange carriers could seek temporary waivers to offer disconnection for nonpayment service. A copy of the order is included in the appendix as Exhibit E. By order dated May 16, 1984, the FCC granted a temporary waiver (of the provisions of its April 27, 1984 order) to allow disconnection of local service for nonpayment of interstate toll charges where permitted by state authority. A copy of the order is included in the Appendix as Exhibit F.

"11. On May 15, 1984, the FCC issued its Memorandum Opinion and Order in CC Docket No. 83–1145 and CC Docket No. 78–72. The FCC limited the local exchange carriers' earnings on interstate billing and collection services to a maximum 12.75 percent rate of return. A copy of this order is included in the Appendix as Exhibit G.

"12. Mountain Bell and United subsequently filed revisions to their interstate Access Service tariffs in response to the FCC's orders of May 15, 1984, and April 27, 1984, concerning rate of return for billing and collection and local service cut-off.

"13. On April 9, 1985, the FCC released a Notice of Proposed Rulemaking initiating an investigation to consider detariffing billing and collection services and to consider the local service cut-off issue. A copy of the notice is included in the Appendix as Exhibit H.

"14. On August 15, 1983, the Public Service Commission of Wyoming instituted a generic investigation of intrastate access charges. Such charges relate to access by AT&T Communications (and other similar carriers) to local exchange carriers' facilities for intrastate, interLATA service, and are subject to regulation by the state commissions. Subsequently, Mountain Bell and United filed proposed intrastate access tariffs. In addition to Mountain Bell, United and AT&T Communications, Consumer Representative Staff intervened in the hearings before the Wyoming Commission.

"15. On February 21, 1985, the Wyoming Commission issued its Memorandum Opinion, Findings and Order on the proposed intrastate Access Service tariffs of Mountain Bell and United. A copy of the order is included in the Appendix as Exhibit I. In ordering paragraph 10 of its February 21st order (at p. 23), the Wyoming Commission required Mountain Bell and United to file new tariff provisions with respect to 'disconnection for nonpayment of telecommunications services'; specifically, the Wyoming Commission required that these tariff provisions 'incorporate a discount for the purchase of accounts receivable (or a charge) of 1% of, or based upon, the total billings'.

"16. On March 25, 1985, AT&T Communications filed with the Wyoming Commission a petition for rehearing of the February 21st Order pursuant to Wyoming Statutes, Section 37–2–214. A copy of the petition is included in the Appendix as Exhibit J. On June 12, 1985, the Wyoming Commission issued its decision denying AT&T Communications' Petition for Rehearing. A copy of the decision is included in the Appendix as Exhibit K.

"17. Mountain Bell and United have filed revised tariff pages designed to implement the requirements of the Wyoming Commission's February 21st Order. Mountain Bell issued its revised tariff page (page 405) on March 1, 1985, with a proposed effective date of March 5. United filed its revised tariff page (page 580) on March 1, with a proposed effective date of March 1. Copies of Section 8 ('Billing and Collection Services') of the Mountain Bell and United intrastate Access Service tariffs are included in the Appendix as Exhibits L and M, respectively. Pursuant to Wyoming Statutes, Section 37–2–214, the Order was stayed during the pendency of AT&T Communications' Petition for Rehearing with respect to matters raised therein.

"18. Local exchange companies such as Mountain Bell and United are responsible for the provision, and for the disconnection, of local service. At present, neither the

**1208**

local exchange carriers nor AT&T Communications has the technical ability to screen and block interstate calls separately from intrastate calls. Moreover, the local exchange companies do not (given their current accounting and billing systems) account for, process and terminate separately for interstate service.

"19. Had the Wyoming Commission's Order of February 21, 1985 been in effect in 1984, based on the results for that year (prior to adjustments), a one percent charge on AT&T Communications' interstate billings in Wyoming would have amounted to approximately $665,000. AT&T Communications' total Wyoming intrastate revenues for 1984 were approximately $1.7 million."

■ It is beyond dispute that interstate telecommunications service is normally outside the reach of state commissions and within the exclusive jurisdiction of the FCC. In the landmark decision of *Smith v. Illinois Bell Tel. Co.*, 282 U.S. 133, 51 S.Ct. 65, 75 L.Ed. 255 (1930), the Supreme Court required the separation of intrastate and interstate matters. The Court stated:

> The separation of the intrastate and interstate property, revenues, and expenses of the Company is important not simply as a theoretical allocation to two branches of the business. It is essential to the appropriate recognition of the competent governmental authority in each field of regulation. *Id.* at 148, 51 S.Ct. at 68.

The *Smith* Court went on to say that the interstate tolls were not a matter for determination by state commissions, but rather were exclusively federal matters. The lower courts have consistently interpreted *Smith* and its progeny as did the Second Circuit in *Ivy Broadcasting Co. v. American Tel. & Tel. Co.*, 391 F.2d 486, 491 (2d Cir.1968):

> [Q]uestions concerning the duties, charges and liabilities of telegraph or telephone companies with respect to interstate communications service are to be governed solely by federal law ... and the states are precluded from acting in this area.

■ The Court agrees with the PSC that AT&T cannot successfully argue that solely because the PSC Order affected it, and interstate carrier, the exclusive jurisdiction of the FCC is thereby invoked. *Simpson v. Shepard*, 230 U.S. 352, 33 S.Ct. 729, 57 L.Ed. 1511 (1913). Nevertheless, because the PSC has ordered AT&T to file a tariff based on its total billings, which include interstate calls, it would appear that the PSC has indeed violated the jurisdictional separations, mandated by the *Smith* Court and 47 U.S.C. § 152(a); 201–205, 221(c). However, the PSC contends that because the FCC temporarily deferred the question of whether or not to allow local disconnect service, it thereby deferred to the states regarding under what circumstances disconnect service should be allowed. *In the Matter of Investigation of Access and Divestiture Related Tariffs*, CC Docket No. 83–1145, Phase I, May 16, 1984. This argument is not convincing, because deferral on a "yes or no" question of whether or not to allow local disconnect service does not constitute approval of an attempt to condition the "yes" answer on payment of a portion of AT&T's interstate profits.

Exclusive FCC jurisdiction over interstate matters is well-established, absent a clear, express deferral. But, in this matter there was not a clear or an express deferral. In fact, the FCC, in its *amicus* brief, has categorically denied that it intended to defer such power to the state commissions:

> The FCC has not deferred to the states so as to permit the Wyoming commission to set this rate for interstate service. The FCC did leave to the states the decision whether to allow service cutoffs at all. That was in recognition of the legitimate interest of state regulators in not having local and intrastate service terminated for nonpayment of interstate service bills without having a say in the matter.

It is not inconceivable that the FCC could acquiesce in some form of state regulation of a nondiscriminatory charge for service termination, if that would be consistent with the FCC's own primary

jurisdiction over the application of such a charge to interstate services. *See, e.g., Diamond Intern. Corp. v. FCC,* 627 F.2d 489, 492–94 (D.C.Cir.1980). But there has been no such acquiescence here; indeed, the separate charge here is inconsistent with current separations and with the FCC's prescription of a ceiling on interstate billing and collection charges. *FCC Brief* at 19–20.

The FCC's construction of its own order is entitled to great deference by this Court. *Diamond Intern. Corp. v. F.C.C.,* 627 F.2d 489 (D.C.Cir.1980). Historically, the FCC has been quite protective of its jurisdiction; it has constantly, and successfully, protested whenever the state commissions have attempted to gain any say whatsoever over interstate calling. *See, e.g., National Ass'n of Regulatory Util. Com'rs. v. F.C.C.,* 746 F.2d 1492, 1498 (D.C.Cir.1984), holding for the FCC that "purely intrastate facilities and services used to complete even a single interstate call may become subject to FCC regulation to the extent of their interstate use." The Court must conclude that if the FCC had truly intended to allow the state commissions to set tariffs based in part on interstate billings, a matter traditionally within its exclusive jurisdiction, the FCC would have done so expressly, clearly, and not by a vague implication or inference.

Moreover, the PSC Order interferes with current FCC rulings. In *Investigation of Access and Divestiture—Related Tariffs, MTS and WATS Market Structure,* CC Docket Nos. 83–1145 (Phase I) and 78–72 (Phase I) (FCC 84–201), May 15, 1984, the FCC ordered as follows:

> [W]e will ... require all local exchange carriers to charge rates which earn a return of no more than 12.75 percent upon billing and collection services ... no rate may lawfully be charged whether under tariff or contract, which earns above 12.75 percent return. *Id.* at 35.

Mountain Bell and United have already filed tariffs allowing them the maximum 12.75% return rate. Therefore, if local disconnect service is a part of the billing and collection rate element, Mountain Bell's and United's collection of the extra one percent of total billings as payment for that service means collection of a return of "more than 12.75 percent upon billing and collection services."

The PSC argues, however, that the FCC does not consider local disconnect service to be a part of the billing and collection rate element. In *Detariffing of Billing and Collection Services,* CC Docket No. 85–88; FCC 85–146; April 9, 1985, the FCC observed that:

> Billing and collection, [in the context of the proposed detariffing], refers to a service provided by a local exchange carrier to an interexchange carrier (IC), whereby the former bills and collects from end users subscribing to an IC's service. More specifically, this service includes recording IC message detail, aggregating the details to create individual messages (a completed call originated by an IC's end user), applying the IC's rates to such messages, processing these rated messages into customer invoice form, mailing bills, collecting payments, accepting customer deposits, handling customer inquiries and investigating billing evasion activities.

Local disconnect service is not mentioned in this list, and because of this and other FCC orders, the PSC concludes that disconnect service is not a part of the billing and collection element. Under the doctrine of *inclusio unius est exclusio alterius* (the inclusion of one is the exclusion of another), the PSC would seem to have a valid argument. However, in its *amicus* brief the FCC has made it clear that it does consider local disconnect service to be included within the billing and collection category.

> The FCC's statement [in its May 16, 1984 Order] that state rules would apply during the interim period meant only that state procedures would govern such matters as when service would be cut off, notice, and penalties for nonpayment. It did not suggest that state agencies could set separate rates *for this*

*feature of billing and collection service* in addition to the charges for that service which already were set forth in federal tariffs. *FCC Brief* at 19, (emphasis added).

The Court again notes that the FCC's interpretation of its own order is entitled to deference. *Diamond Intern. Corp., supra.* The Court concludes that the FCC intended to include local disconnect service as one of the billing and collection services covered by its May 15, 1984 Order limiting charges for billing and collection services to 12.75 percent. The PSC Order therefore conflicts with the FCC Order by allowing Mountain Bell and United Telephone to collect a return of more than 12.75 percent. Under the Supremacy Clause of the United States Constitution, state laws which conflict with overriding federal laws, must give way. *See e.g. National Ass'n of Regulatory Util. Com'rs. v. F.C.C.*, 746 F.2d 1492, 1498 (D.C.Cir.1984).

Finally, the PSC contends that if it cannot order AT&T to pay for the disconnect service, AT&T will in effect be getting the service for free, thus allowing the interstate carrier to have a "free ride" at the expense of the intrastate ratepayers. Again the PSC is mistaken. As the FCC explains:

> The costs of billing and collection services, including service termination features, already are allocated among interstate and intrastate jurisdictions pursuant to separations; and the interstate portion of those costs, which is all that can properly be charged against AT&T's interstate operations, is the basis for the FCC's billing and collection rate that is included in interstate tariffs. AT&T already is paying for this interstate service, and any attempt to impose additional costs on AT&T as an interstate carrier would require it to pay two times for the same thing. *FCC Brief* at 20.

The FCC has exclusive jurisdiction over interstate tariffs, and has set what it considers a fair rate, 12.75%, for charges involving billing and collection services. This Court cannot allow the PSC, through the medium of a tariff on total billings, to interfere with the FCC's decision.

The Court sympathizes with the PSC's observation that the recent AT&T divestiture has favored interstate over intrastate calls, and densely populated over more rural states. It clearly does and in the Court's opinion was neither in the public interest nor the nation's interest but it nevertheless would violate federal statutory and case law for this Court to allow the PSC to set off intrastate costs by increasing, even partially, interstate rates. *New York Tel. Co. v. F.C.C.*, 631 F.2d 1059 (2d Cir.1980). The remedy for such costs must come from the FCC in which the Congress has vested jurisdiction over such problems. Because it includes interstate billings, a local disconnect charge based on total billings was beyond the scope of the PSC's authority to impose. Furthermore, the PSC Order conflicts with FCC rulings. Therefore, it is

ORDERED that defendant PSC's motion for summary judgment be, and the same hereby is, denied. It is further

ORDERED that plaintiff AT & T's motion for summary judgment be, and the same hereby is, granted, and that defendant PSC be, and the same hereby is, enjoined from enforcing the one percent tariff based on total billings as set forth in its February 21, 1985 order. It is further

ORDERED that unless and until the FCC should provide to the contrary, the defendants, Mountain Bell and United Telephone, are required to repay to plaintiff all funds collected pursuant to the above said PSC Order, together with interest thereon as provided by law.