NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY, Plaintiff,

v.

AT & T COMMUNICATION, INC., Defendant.

No. 85–0090 P.

United States District Court, D. Maine.

Dec. 23, 1985.

Everett P. Ingalls, Portland, Me., for plaintiff.

Michael A. Nelson, Portland, Me., for defendant.

## MEMORANDUM OPINION
## AND ORDER

GENE CARTER, District Judge.

Presently before the Court are Plaintiff New England Telephone and Telegraph Company's ("NET") and Defendant American Telephone and Telegraph's ("AT & T") Motions for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. On December 6, 1985, the Federal Communications Commission ("FCC") asked to participate as *amicus curiae* and submitted for the Court's consideration an *amicus* brief filed in a recent case involving similar issues in the District of Wyoming. The Court concludes that the issue can be decided on the Joint Stipulation of Facts and related documents submitted by the parties and that AT & T is entitled to summary judgment as a matter of law.

This case arises from Defendant AT & T's failure to pay a bill submitted to it by NET on February 14, 1985, and payable on or before March 14, 1985. The bill, for the amount of $87,100.20, represents $.33 per customer toll statement charged by NET for the service to AT & T of disconnecting a customer's telephone service for failure to pay his or her interstate phone bill, commonly referred to as disconnection for non-payment ("DNP"). NET's charge of $.33 per customer toll statement is pursuant to a NET, Maine Public Utilities Commission ("MPUC") tariff issued on December 10, 1984 ("MPUC Tariff"). AT & T contends that the tariff is invalid under the Supremacy Clause of the United States Constitution because it conflicts with the Federal Communications Commission ("FCC") jurisdiction over interstate billing and collection service, that the tariff is beyond the jurisdiction of the MPUC in that it imposes a charge on interstate service, and that the tariff violates the Commerce Clause of the United States Constitution by imposing an unconstitutional burden on interstate commerce. It is AT & T's position that since the charges are pursuant to an unlawful tariff, it can not be required to pay the bills submitted by NET.

## I. REGULATORY BACKGROUND

A brief review of the regulatory background relevant to this case is helpful. On January 1, 1984, the former Bell Operating Companies, including NET, were divested from AT & T pursuant to a Modified Final Judgment approved by United States District Judge Harold Greene ending the Government's antitrust suit against the Bell System. The result is that, whereas the Bell System previously had provided both intrastate and interstate service, NET now provides intrastate service but is pro-

hibited from providing interstate service, while AT & T provides interstate service but is prohibited from providing intrastate service. At divestiture, however, NET retained the necessary billing systems and personnel that had been used to render combined intrastate and interstate bills. Consequently, in accordance with an arrangement approved by Judge Green, NET filed with the FCC a tariff under which it would furnish billing and collection services to interstate carriers, including AT & T ("FCC Tariff"). NET FCC Tariff No. 40, March 19, 1984.

The FCC Tariff did not specifically address the aspect of the billing and collection services which is at issue in the suit, namely DNP. Because of technical limitations, AT & T is unable to disconnect a customer's interstate service except through disconnection of a customer's total telephone service and thus is dependent upon NET for DNP. The FCC directed, however, "that all provisions for 'local service cut-offs' be deleted from the tariffs." *Investigation of Access and Divestiture Related Tariffs*, CC Docket No. 83–1145, Phase I, Decision No. FCC 84–188 (released April 27, 1984). Memorandum Opinion and Order, par. 11 at p. 4. Nineteen days later, the FCC modified the treatment of DNP "on a temporary basis" as follows:

> All exchange carriers will be required to remove from their interstate access tariffs any language permitting termination of local service for non-payment of interstate. For the period of the waiver, we will not bar exchange carriers from terminating local service for non-payment of a bill for interstate toll services where such terminations are permitted by state authority. Since state rules governing service termination for non-payment of interstate toll bills will apply while we have this matter under review, there is no need for any reference to termination of local service in tariffs on file with this Commission.

Memorandum Opinion and Order of May 16, 1984, par. 4 at p. 2.

One day before the May 16, 1984 Order modifying its treatment of DNP, the FCC specified the rate of return that it would allow for interstate billing and collection service. Noting that "AT & T probably has no realistic short-term alternative to the use of local exchange billing operations", the FCC ordered that:

> [W]e will ... require all local exchange carriers to charge rates which earn a return of no more than 12.75 percent upon billing and collection services.... All filing carriers are directed to continue providing billing and collection until revised tariff rates based on no more than a 12.75 percent return are filed and become effective. This conclusion is effective immediately upon the effective date of the access tariffs, however, so that after that date no rate may lawfully be charged, whether under tariff or contract, which earns above a 12.75 percent return.

Memorandum Opinion and Order of May 15, 1984, par. 83, at p. 35.

Following the FCC Orders regarding DNP and a rate of return ceiling for billing and collection services, the MPUC considered intrastate rate increases proposed by NET. On November 13, 1984, the MPUC issued an Order on rate design issues in which it held:

> [O]ur analysis shows that there is at minimum an additional $1 million charge that NET could impose on AT & T for the right of employing local disconnection procedures for the purposes of collecting AT & T's bills....
>
> We will attribute $1 million in additional revenue to NET. The basis for the attribution is that NET can legitimately look at AT & T for at least this amount for the use of the DNP provisions which NET makes available to AT & T by undertaking its billing and collection. Thus, it should be recovered from AT & T and not NET's ratepayers.

Maine Public Utilities Commission Order of November 13, 1984, at pp. 50, 51. On December 10, 1984, in compliance with the

November 13, 1984 Order, NET filed with the MPUC a tariff which provided:

A charge of $.33 per customer toll statement processed for an interexchange carrier subscribing to the Company's interstate (and any future intrastate) Billing and Collection services is billed to the carrier for use of the Company's provisions for discontinuance of service for nonpayment.

MPUC Tariff No. 15, Part A, Section 1, Page 5.1, Paragraph 1.2.3. (effective January 1, 1985). It is that tariff and the charges made pursuant to it that AT & T contends are unlawful.

## II. INTRASTATE VS. INTERSTATE SERVICE

A central issue in this case is the characterization of DNP when used in connection with a customer's non-payment of his or her interstate bill. AT & T argues that it is an interstate service, that it is subject to the FCC's exclusive jurisdiction over rates and charges for interstate services, and that any state action which conflicts with the FCC's jurisdiction, or the regulations and policies that it has adopted for interstate services, is invalid under the Supremacy Clause of the United States Constitution. AT & T contends that the MPUC tariff is such state action in that it requires NET to charge for what is an interstate service. Furthermore, AT & T argues that imposition of a charge on interstate service is beyond the jurisdiction and state statutory authority of the MPUC, based upon the jurisdictional separations principles enunciated in *Smith v. Illinois Bell Telephone Co.*, 282 U.S. 133, 51 S.Ct. 65, 75 L.Ed. 255 (1930), and the limitations on the MPUC's authority set forth in *New England Telephone and Telegraph Company v. Public Utilities Commission*, 148 Me. 374, 94 A.2d 801, 814 (1953).

In support of its assertion that the DNP at issue in this case is an interstate service, AT & T points to the fact that it provides only interstate services in Maine. Thus, AT & T argues, any disconnection service provided to AT & T by NET is caused by non-payment of AT & T's interstate charges and is, under such circumstances, nothing but interstate service. AT & T maintains that the fact that intrastate facilities are used to effectuate the DNP or that intrastate service is also disconnected does not alter this characterization.

NET, on the other hand, argues that DNP is an intrastate function subject to the authority of the Maine PUC, not an interstate service subject to FCC jurisdiction. In support of its position, NET points to the fact that the FCC specifically designated DNP as subject to state regulatory authority. In its Order dated May· 16, 1984, the FCC ordered that all interstate carriers remove any language permitting DNP for non-payment of interstate bills from their tariffs and stated that "state rules governing service termination for nonpayment of interstate toll bills will apply." Memorandum Opinion and Order of May 16, 1984, par. 4 at p. 2.

 Thus, it is NET's position that although this is an area subject to the FCC's jurisdiction, the FCC has deferred to state authority on this issue. It is well settled that the FCC has exclusive jurisdiction over rates and charges for interstate service. Further, in areas where a federal regulatory agency has exclusive jurisdiction, any deferral of authority to the state must be strictly construed and any ambiguities resolved against the states. *See United States v. Public Utilities Commission of California*, 345 U.S. 295, 304, 310, 73 S.Ct. 706, 712, 715, 97 L.Ed. 1020 (1953). In this case, there was deferral to state authority on the issue of whether and under what circumstances DNP was permissible. However, there was not a clear or an express deferral by the FCC of authority to establish additional charges for DNP. In fact, the FCC has categorically denied that it intended to defer such power to state authority. *See AT & T Communications of the Mountain States, Inc. v. Public Service Commission of Wyoming*, No. C85–0254–B, slip op. at 13 (D.Wyoming Nov. 25, 1985). The FCC's construction of its own order is entitled to great deference

by this Court. *Id.* at 13–14 (citing *Diamond Intern. Corp. v. F.C.C.*, 627 F.2d 489 (D.C.Cir.1980)). Thus, the Court concludes that the MPUC does not have the authority, based upon the FCC's general deferral of authority over DNP, to regulate charges on interstate carriers for DNP for nonpayment of the interstate portion of a bill.

## III. INCLUSION OF DNP IN BILLING AND COLLECTION SERVICES

AT & T contends that the additional charge for DNP conflicts with the FCC Order dated May 15, 1984 establishing a 12.75 percent rate of return ceiling for billing and collection service. NET, on the other hand, argues that DNP is not included within the billing and collection services referred to in that Order. In support of its position, NET points to a NET tariff filed with the FCC which states that NET would provide, at the option of the interstate carrier, four general billing and collection services: recording service, billing service, billing analysis service, and billing information. NET FCC tariff No. 40, March 19, 1984, rec. 8, at p. 117. DNP was not included in the Tariff, and in fact the FCC later specifically directed that any reference to DNP for nonpayment of an interstate bill must be deleted from all tariffs filed with the FCC. Memorandum, Opinion and Order of April 27, 1984, par. 11, at p. 4. Therefore, NET argues, the FCC did not contemplate DNP to be within the billing and collection services provided to interstate carriers by NET and is not subject to the 12.75 percent rate of return limitation.

Although NET's argument has merit, the FCC has indicated that it reads its May 15, 1984 Order differently. Specifically, the FCC has stated that it does consider DNP to be included in billing and collection services for purposes of the 12.75 percent rate of return ceiling. *See AT & T Communications of the Mountain States, Inc. v. Public Service Commission of Wyoming*, 625 F.Supp. 1204, 1209–10 (D.Wyo. 1985). As noted earlier, the FCC's interpretation of its own order is entitled to deference. Therefore, the Court concludes that

DNP is covered by the FCC May 15, 1984 Order limiting charges for billing and collection services to 12.75 percent. The MPUC tariff allowing an additional charge for DNP results in a total charge for billing and collection services in excess of the 12.75 percent limitation. Consequently, it conflicts with the FCC regulation and is invalid under the Supremacy Clause of the United States Constitution. *See e.g., National Ass'n of Regulatory Util. Comm'ns v. F.C.C.*, 746 F.2d 1492, 1498 (D.C.Cir.1984).

In summary, the FCC has not delegated authority to the MPUC to impose a charge on interstate carriers for DNP for nonpayment of the interstate portion of a billing. Furthermore, any charge on interstate carriers for DNP is subject to the FCC's Order limiting charges for billing and collection services to a 12.75 percent rate of return. Therefore, the MPUC tariff imposing an additional $.33 charge per billing statement for DNP is beyond the jurisdiction of the MPUC and is invalid under the Supremacy Clause of the United States Constitution. Accordingly, the Court GRANTS AT & T's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

So ORDERED. Judgment to ENTER.